**UNITED STATES, Appellee,**

v.

**Airman Larry A. FORS, U. S. Air Force, Appellant.**

**ACM 22221.**
**No. 35,031.**

U. S. Court of Military Appeals.

March 30, 1981.

For Appellant: *Colonel Larry G. Stephens* (argued and reargued); *Colonel B. Ellis Phillips* (on brief).

For Appellee: *Lieutenant Colonel Alvin E. Schlechter* (argued), *Captain James R. Van Orsdol* (reargued); *Colonel Julius C. Ullerich, Jr., Captain John W. Johnson, Captain Charles F. Teschner* (on brief); *Colonel James P. Porter.*

Opinion of the Court

FLETCHER, Judge:

The United States Air Force Court of Military Review has examined appellant's court-martial. It approved the findings of guilty against him with some modifications.[1] Nonetheless, his convictions for the attempted rape of Airman Michelle Brashier and the assault on Airman Donna Kirkpatrick still stand. The court did reassess his sentence to provide only for a bad-conduct discharge, confinement at hard labor for 10 months, total forfeitures and reduction to the lowest enlisted grade.

Several issues were granted for review by this Court. 4 M.J. 179 (C.M.A.1977). Our primary concern is the admissibility of the courtroom identifications of the appellant made by two government witnesses, Airmen Brashier and Kirkpatrick. Para. 153a, Manual for Courts-Martial, United States, 1969 (Revised edition); *United States v. Quick*, 3 M.J. 70, 71 (C.M.A.1977). In resolving these questions, we will necessarily discuss two lineups held prior to trial in which the appellant appeared and which both government witnesses observed.

The court-martial of the appellant took place during February of 1977. At that time Airman Brashier, who had been sexually attacked on September 19, 1976, and Airman Kirkpatrick, who was the victim of an assault and battery on September 26, 1976, each identified the appellant as her assailant. The record of trial, however, reveals that both these witnesses had publicly failed to positively identify the appellant as their assailant at a pretrial lineup held on October 1, 1976. Moreover, the record indicates that at a second lineup on December 24, 1976, Airman Kirkpatrick made a public identification of the appellant but Airman Brashier did not.

Two matters in the conduct of these lineups are important to our review of this case. First, the appellant was not informed of his right to the presence of counsel at the second lineup in December, though he was so informed and waived the presence of counsel at the first lineup in October.[2] Second, the appellant was the only person to appear in both lineups. These two lineups both occurred prior to any formal charges being lodged against the appellant.

I

◼ Our starting point in this case is para. 153a, Manual, *supra.* It provides in part:

An identification of an accused or suspect as being a participant in the offense, whether made at his trial or otherwise, which was a *result* of his having been subjected by the United States or other domestic authorities to a lineup for the purpose of identification without the

---

1. After the Court of Military Review's action, the following findings remain: attempted rape of Airman Brashier; violation of a base regulation by entering Airman Highberger's barracks; burglarious entry with intent to commit rape of Airman Brashier; burglarious entry with intent to commit assault and battery on Airman Highberger; assault by means of striking and punching Airman Kirkpatrick; assault by means of grabbing and kicking Airman Highberger; possession of marihuana; unlawful entry to commit an assault consummated by a battery on Airman Kirkpatrick, in violation of Articles 80, 92, 129, 128, 134, and 130, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 892, 929, 928, 934, and 930, respectively. The ap-

pellant pleaded guilty to violation of a base regulation and possession of marihuana.

2. Defense counsel's original objections to the courtroom identification testimony of Brashier and Kirkpatrick were based on his contention that such testimony was the product of unduly suggestive lineups. It was not until the end of the court-martial that the military judge's questioning of Agent Acuna disclosed that the latter had not advised the appellant of his right to counsel at the December lineup. In view of this belated disclosure and the detailed nature of his original motion we are not inclined to find that defense counsel intelligently waived this specific objection to the government witnesses' courtroom identification testimony.

presence of counsel for him is inadmissible against the accused or suspect if he did not voluntarily and intelligently waive his right to the presence of counsel.... However, when an identification was made at a lineup conducted in violation of the right to counsel, that identification is a result of· the illegal lineup, and a later identification by one present at such an illegal lineup is also a result thereof unless the contrary is shown by clear and convincing evidence.

The record of trial indicates that the appellant was a suspect at the time of the second lineup in December. The Government concedes that the results of this lineup were inadmissible against him since he did not voluntarily and intelligently waive his right to the presence of counsel. We agree.[3]

█ The second question this Court must decide is whether the courtroom identification testimony of these witnesses is a result of the second illegal lineup and therefore also inadmissible against the appellant at his court-martial. Para. 153, Manual, *supra*. The President in the Manual for Courts-Martial places the burden on the Government to establish by clear and convincing evidence that this identification testimony was based on observations of the suspect other than those stemming from the illegal lineup. *Id.; see United States v. Wade*, 388 U.S. 218, 240, 87 S.Ct. 1926, 1939, 18 L.Ed.2d 1149 (1967); *United States v. Quick, supra*. The Supreme Court has delineated several factors which should be considered by the trial court in determining whether the in-court identification testimony has an independent or untainted source. *See Moore v. Illinois*, 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977); *United States v. Wade, supra* 388 U.S. at 241, 87 S.Ct. at 1939. This Court reiterated these factors in *United States v. Quick, supra* at 71–72 (footnote omitted):

*United States v. Wade*

[Factors considered in determining whether an illegal lineup would taint an in-court identification or constitute an independent source for the latter identification.]

1. Prior opportunity [of the witness] to observe the alleged criminal act.

2. How long and how well the victim observed the perpetrator of the crime.

3. The existence of any discrepancy between any prelineup description and the defendant's actual description.

4–1. Any identification prior to lineup of another person.

4–2. The identification by picture of the defendant prior to the lineup.

4–3. The failure to identify the defendant on a prior occasion.

5. The lapse of time between the alleged act and the lineup identification.

█ Accordingly, we must review the facts in this case to determine whether there is sufficient "evidence to support the trial judge's determination ... that there was a source for [the] in-court identification[s] *independent* of the illegal" December lineup. *See United States v. Quick, supra* at 75 (emphasis added).

· We must first turn our attention to Airman Brashier and the circumstances surrounding her courtroom identifications. She pointed out the appellant in the courtroom and named him as her assailant. She also pointed him out in a picture of a lineup held in October 1976. However, upon examination by the military judge, she frankly admitted that her courtroom identifications of the appellant were influenced by the two prior lineups. Accordingly, the record of trial must be perused for some evidence of the *Wade* factors from which the military judge could conclude clearly and

**3.** Evidence of identifications of the appellant by both witnesses at the second lineup is in the record of trial. The Government is normally not permitted to show an independent source for courtroom identifications where, on direct examination, it has also introduced evidence of prior illegal identifications to bolster the in-

court testimony. *See Moore v. Illinois*, 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977); *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). In appellant's case, evidence of prior identifications at the second illegal lineup was adduced by defense counsel on cross-examination.

convincingly that an untainted or independent source nonetheless existed for her courtroom identifications. *Id.*

First, there is evidence in this case that Airman Brashier had ample opportunity to observe her assailant both during and shortly after the attack on her person. She testified that this opportunity lasted from five to fifteen minutes. During this period, she initially struggled with him in close, if not intimate, proximity. Later she conversed with him and watched him dress. Admittedly, these observations were made during and after a physical struggle at 4:30 in the morning. They were also made in a nearly dark room with lighting coming only from an outside street lamp shining through a partially opened venetian blind. Yet, the latter evidence could have been given little weight by the military judge who was the fact finder tasked by the Code with deciding this question. In any event, there was evidence for him to conclude Airman Brashier's initial observations of her assailant were long enough and clear enough to be an independent source for her courtroom identifications of the appellant.

Second, there is also evidence in the record of trial that there was no significant discrepancy between any prelineup descriptions of her assailant provided by Airman Brashier and the appellant's actual appearance. The defense at trial introduced a composite drawing made by Airman Brashier and the police soon after the crime. The defense argued that the picture did not resemble the appellant. The Government argued that it did resemble the appellant and in fact accounted for his being placed in the October lineup by his commanding officer or first sergeant. It is not necessary for this Court to decide this factual dispute. We simply point out that the military judge had some evidence from which he could find that the composite drawing was consistent with appellant's appearance at trial.

Third, there was no evidence in the record of trial that Airman Brashier, prior to

the lineup or at some other time, identified a person other than the appellant as her assailant. Moreover, there was no evidence in the record of trial that prior to the lineup Airman Brashier was shown a picture of the appellant and failed to identify him as her assailant. This absence of misidentification evidence also supports the military judge's ruling.

Fourth, there was some evidence that Airman Brashier did not fail to identify the appellant as her assailant prior to the December lineup. Of course, she admitted that she only tentatively identified him at the first lineup in October and did not positively identify him at either lineup. However, she asserted that she in fact recognized him as her assailant at these times but failed to publicly acknowledge it because of fear for her personal safety. Moreover, she testified that on two occasions after the October lineup she saw the appellant on base and recognized him as her assailant.[4] It was the responsibility of the military judge to evaluate Airman Brashier's credibility but it is clear that an evidentiary basis existed for establishing this element of the *Wade* test.

Fifth, the lapse of time between the alleged act and the illegal lineup identification was approximately three months. *Cf. United States v. Quick, supra.* This is not as short a period as treated in *United States v. Quick, supra,* but neither is it of inordinate length. *See Neil v. Biggers,* 409 U.S. 188, 201, 93 S.Ct. 375, 383, 34 L.Ed.2d 401 (1972); *see also United States v. Wilcox,* 507 F.2d 364 (4th Cir. 1974), *cert. denied,* 420 U.S. 979, 95 S.Ct. 1408, 43 L.Ed.2d 661 (1975); and *United States v. Butler,* 426 F.2d 1275 (1st Cir. 1970), *cert. denied,* 401 U.S. 978, 91 S.Ct. 1207, 28 L.Ed.2d 328 (1971). Moreover, assuming the military judge accepted Airman Brashier's testimony, the first lineup with similar informal results occurred approximately one to two weeks after the alleged act.

---

4. Evidence that a witness made a similar identification prior to trial is admissible as corroborative evidence of the witness' credibility even if not attacked by the defense. Para. 153*a,* Manual for Courts-Martial, United States, 1969 (Revised edition).

Our review of the record of trial reveals that the military judge had sufficient evidence to conclude clearly and convincingly that Airman Brashier's courtroom identification had a source independent of and untainted by the illegal lineup.

We must next turn our attention to Airman Kirkpatrick and the circumstances surrounding her courtroom identification of the appellant. Like Brashier, she pointed out the appellant in the courtroom and named him as her assailant. Unlike Brashier, however, she stated that her courtroom identification was not influenced by the prior lineups she had observed. Again, we must examine the record of trial for some evidence of the *Wade* factors from which the military judge could conclude clearly and convincingly that an independent and untainted source existed for her courtroom identification.

First, there was some, albeit not much, evidence in the record of trial upon which the military judge could have concluded that Airman Kirkpatrick had a sufficient opportunity to observe her assailant at the time of the criminal act. Her observations were made for approximately thirty seconds during the two to three minutes he was in her barracks room. Such a period, though not lengthy, does not preclude the imprinting of "a definite image . . . in her mind." *See United States v. Quick, supra* at 74. In addition, her observations, unlike Airman Brashier's, were made in a room in which the lighting was considered bright. Of course, Airman Kirkpatrick testified that her assailant wore a light nylon stocking over his face which distorted his features. Nevertheless she insisted that she could still recognize the outline of his face, marks like pimples, and his brown hair. The military judge as a fact-finder could have concluded from this evidence that her prelineup opportunity to view her assailant was the source of her courtroom identification.

Second, the military judge also had some evidence before him that any discrepancies between Airman Kirkpatrick's prelineup descriptions of her assailant and the appellant's actual description were minimal or of little import. Her first descriptions of her assailant's hair were "light" and "blond" hair, though the appellant's hair was brown. Her first descriptions of his complexion omitted any reference to freckles or pimples on his face. Finally, Airman Kirkpatrick admitted that she earlier described her attacker as having a round face. This did not correspond to the appellant's facial structure. Nonetheless, it must be remembered, that the record indicates her assailant wore a light stocking mask of uniform color over his face. Accordingly, it was possible that if the military judge viewed these discrepancies in this light, their importance would be lessened.

Third, the record does not indicate that Airman Kirkpatrick identified any other person as her assailant prior to the lineup.

Fourth, the record does indicate that Airman Kirkpatrick failed to publicly identify the appellant in the lineup on October 1, 1976. Normally, such a fact would be some evidence that the source of her courtroom identification was the subsequent illegal lineup in December. However, Airman Kirkpatrick testified her failure to identify the appellant or even remember if he was in the first lineup, stemmed from her fear and nervousness over the recent assault. If the military judge believed Airman Kirkpatrick's testimony on this issue, its importance as a factor against admissibility of the courtroom identification was diminished.

Finally, the time between the alleged act and the December lineup was approximately three months. Such a time period did not necessarily detract from the conclusion that Airman Kirkpatrick's courtroom identification was based on a source independent of the second lineup.

Again, our review of the record of trial reveals that the military judge had sufficient evidence to conclude clearly and convincingly that Airman Kirkpatrick's courtroom identification of the appellant had a source independent of and untainted by the illegal December lineup. This is not to say that some evidence lending itself to a contrary conclusion did not exist in the record

of trial or that a different military judge might not have reached a contrary conclusion with respect to the admissibility of either of the above witnesses' courtroom identifications of the appellant.

## II

■ The appellant's second challenge to the admissibility of his courtroom identifications by Airmen Brashier and Kirkpatrick is that they were products of unduly suggestive pretrial lineups. *See Neil v. Biggers, supra; United States v. Quick, supra.* It is the trial judge who is tasked with determining whether the pretrial identification process was impermissibly suggestive and, if so, whether it was so suggestive as to raise a very substantial likelihood of irreparable misidentification. *See United States v. Williams*, 592 F.2d 1277, 1280–81 (5th Cir. 1979); *Jackson v. Fogg*, 589 F.2d 108, 111 (2nd Cir. 1978). We will review his ruling to insure that it was not clearly erroneous or based on insufficient evidence in the record of trial. *See Branch v. Estelle*, 631 F.2d 1229, 1235 (5th Cir. 1980).

■ The appellant alleges that the pretrial identification procedures utilized in his case were unduly suggestive for several reasons. First, he notes that Airman Kirkpatrick's testimony reveals that two persons out of the six who participated in the October lineup had mustaches. Her testimony also indicates that this was contrary to her previous description of her assailant and reason for disregarding these persons in the lineup. Appellant further notes that Airman Brashier's testimony discloses that she had seen all the persons in the October lineup around the base except him. Finally, the appellant points out that he was the only person who participated in both the October and December lineups.

Turning first to the October lineup, we do not find it unduly suggestive as claimed by the appellant. The four remaining persons in the October lineup did not have mustaches so it is improbable that this factor alone would lead to the misidentification of the appellant as the assailant. *See United States v. Clark*, 346 F.Supp. 428, 431 n. 4

(E.D.Pa.1972), *affirmed*, 475 F.2d 1396 (3d Cir. 1973). Moreover, we do not find the mere fact that a government witness recognized other members of the lineup from her prior undisclosed experience a particular indication of unnecessary suggestivity in this case. *See United States v. Sherman*, 421 F.2d 198, 200 (4th Cir. 1970), *cert. denied*, 398 U.S. 914, 90 S.Ct. 1717, 26 L.Ed.2d 78 (1970).

However, we are struck by the fact that the appellant was the only person common to both lineups. This is short of the ideal. *See Foster v. California*, 394 U.S. 440, 443, 89 S.Ct. 1127, 1128, 22 L.Ed.2d 402 (1969); *Simmons v. United States*, 390 U.S. 377, 383, 88 S.Ct. 967, 970, 19 L.Ed.2d 1247 (1968). Of course, the reoccurring appearance of one person in successive pretrial confrontations by itself has not always been considered unnecessarily suggestive. *See United States v. Cooper*, 472 F.2d 64, 66 (5th Cir. 1973), *cert. denied*, 414 U.S. 840, 94 S.Ct. 96, 38 L.Ed.2d 77 (1973); *Doss v. United States*, 431 F.2d 601, 604 (9th Cir. 1970). Here, however, the appellant was not afforded an opportunity to have counsel present at the second lineup. The defense was unfairly hampered in its ability to demonstrate other circumstances surrounding that lineup which, together with his repeated appearance, might establish its suggestivity. *See United States v. Wade, supra* at 240–41, 87 S.Ct. 1939–40. In such a situation, we are inclined to presume that the second lineup based on the totality of circumstances was unnecessarily suggestive. *See Branch v. Estelle supra* at 1234.

The critical question then becomes whether, under the totality of the circumstances of this case, the courtroom identifications were reliable even though the pretrial confrontation procedure was suggestive. *Neil v. Biggers, supra.* The Supreme Court has delineated certain evidentiary factors from which the trial judge can weigh the corrupting effect of the suggestive pretrial identification procedure and determine the admissibility of a courtroom identification. *See Neil v. Biggers, supra* at 199–200, 93 S.Ct. at 382–83; *see also United*

*States v. Quick, supra.* In order for this Court to reverse his decision, we must be able to "say that under all the circumstances of this case there [was] 'a very substantial likelihood of irreparable misidentification.'" *See Manson v. Braithwaite,* 432 U.S. 98, 116, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977).

This we cannot do in the present case. Earlier in this opinion, we found sufficient evidence from which a military judge could rule clearly and convincingly that an independent source existed for these courtroom identifications. As was noted in *United States v. Quick, supra* at 71, certain factors leading to this determination are also critical to any finding that there existed no substantial likelihood of irreparable misidentification. Accordingly, to the extent these factors were established earlier, we find they substantially lessen the likelihood that appellant's identification at his court-martial was caused by the suggestive lineup procedure.

The record of trial should nonetheless be examined for evidence establishing the remaining factor of the *Biggers* test. In other words, what degree of certainty was demonstrated by both witnesses at the first lineup where no suggestive procedures were utilized? The record indicates that both Brashier and Kirkpatrick testified that they did not positively identify the appellant at the first lineup. This evidence would normally support the appellant's contention that it was the suggestive identification procedure at the second lineup which led to his alleged misidentification as the assailant. Yet, it must be noted that this evidence does not stand alone in the record of trial. Brashier testified that at the first lineup she was privately sure the appellant was the assailant, but refused to disclose this fact publicly out of fear and anxiety. Kirkpatrick indicated that fear was also responsible for her failure even to see the appellant in the first lineup. In light of the

military judge's denial of the appellant's motion, it appears that little weight was given to both witnesses' first lineup silence on the certainty issue.

On the basis of this evidence in the record of trial and our respect for the fact-finding powers of the military judge and Court of Military Review, we will not reverse their judgments in the present case.

The decision of the United States Air Force Court of Military Review is affirmed.[5]

Chief Judge EVERETT concurs.

COOK, Judge (concurring in the result):

I disagree with several aspects of the principal opinion, but I concur in affirming the decision of the Court of Military Review.

My principal disagreement is with the declaration that the accused, although not formally charged or under physical restraint, was entitled to have counsel at the lineups at which he participated. In my opinion, paragraph 153a, Manual for Courts-Martial, United States, 1969 (Revised edition), which, as of September 1980 was replaced in pertinent part by Mil.R. Evid. 321, did not establish a rule different from that which the United States Supreme Court held was constitutionally required. Analysis of Contents, Manual for Courts-Martial, United States, 1969 (Revised edition), para. 153a. The Supreme Court has held that the constitutional right does not extend to a lineup conducted prior to a formal charge or an adversary judicial proceeding. *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). Under Mil.R.Evid. 321, counsel is required at a lineup only if the lineup is held "after preferral of charges or imposition of pretrial restraint under paragraph 20 of [the] Manual for the offense under investigation."

5. Upon examination of the record of trial, we find Issues I and II, originally granted in this case, to be without merit.