UNITED STATES, Appellee,

v.

Robert K. WEBB, Sergeant
U.S. Army, Appellant.

No. 68,059.
CMR No. 8903194.

U.S. Court of Military Appeals.

Argued April 8, 1993.

Decided Sept. 27, 1993.

For Appellant: *Captain Michael Huber* (argued); *Colonel Malcolm H. Squires, Jr.* and *Major Robin L. Hall* (on brief); *Lieutenant Colonel James H. Weise* and *Captain Mark L. Toole.*

For Appellee: *Major Donna L. Barlett* (argued); *Colonel Dayton M. Cramer, Lieutenant Colonel Joseph A. Russelburg* (on brief).

### Opinion of the Court

CRAWFORD, Judge:

On September 9, 11, and 12, and October 1–4, 1989, appellant was tried by a general court-martial composed of officer and enlisted members. Contrary to his pleas, appellant was found guilty of assault consummated by a battery and housebreaking with intent to peep, in violation of Articles 128 and 130, Uniform Code of Military Justice, 10 USC §§ 928 and 930, respectively. Appellant was sentenced to a bad-conduct discharge, confinement for 2 years, and reduction to E1. The convening authority approved the sentence. On February 24, 1992, the Court of Military Review affirmed the findings of guilty and the sentence in an unpublished opinion. On December 29, 1992, this Court granted review of the following issues:

### I

WHETHER TRIAL COUNSEL IMPROPERLY COMMENTED ON THE RIGHT OF THE ACCUSED TO REMAIN SILENT AND UNFAIRLY ATTEMPTED TO SHIFT THE BURDEN OF PROOF WHEN HE CALLED THE MEMBERS' ATTENTION TO THE FACT THAT THE DEFENSE HAD FAILED TO OFFER EVIDENCE OF APPELLANT'S ALIBI DEFENSE AS PROMISED BY THE DEFENSE IN THEIR OPENING STATEMENT.

### II

WHETHER THE MILITARY JUDGE ERRONEOUSLY PERMITTED SECOND LIEUTENANT [H] TO IDENTIFY APPELLANT AS HER ASSAILANT.

### III

WHETHER THE EVIDENCE IS INSUFFICIENT TO PROVE APPELLANT'S GUILT BEYOND A REASONABLE DOUBT (THE SPECIFICATION OF CHARGE I [HOUSEBREAKING]).

### FACTS

The following facts were noted by the court below:

On 24 March 1989, 2d Lieutenant H returned to her billets in Yongsan, Korea, after the morning physical training formation. As she prepared to shower, she went into a storage room opposite the shower room in the female officers' billets intending to iron a uniform to wear that day. In the storage room, she encountered a male who struck her. She screamed and flailed at him with an iron that she had been carrying. He knocked her down and then fled. At a lineup, she

tentatively identified the appellant, but "was not 100% sure."

Unpub. op. at 1–2.

To contradict evidence of a nefarious intent, appellant presented several witnesses who offered testimony of his outstanding duty performance and that the charged offenses were inconsistent with appellant's peaceful, law-abiding nature.

At appellant's trial, the pertinent jury instructions as to the elements of the offense of housebreaking with intent to peep were as follows:

Now, proof that the accused actually committed or even attempted the offense of, for a better term, acting as a peeping Tom, is not required. However, you must be convinced beyond a reasonable doubt that the accused intended each and every element of that offense at the time of the unlawful entry. These elements would be as follows: First, that at the time and place alleged the accused was disorderly in that he secreted himself within the utility room of Building 4033 which was then occupied by female servicemembers and that he did that with the intent to willfully look at nude female servicemembers not his wife without authority and while they were private therein [sic]. The court is also advised that, with regard to this particular element, is that looking out of a store room door, if that in fact occurred, is wrongful if it's done for the purpose of observing female persons therein even if they were not actually observed. The second element of that offense would be that under the circumstances such conduct was to the prejudice of good order and discipline in the armed forces. The court is also advised that the offense of housebreaking requires an unlawful entry into a building, or structure and a building includes a house, a room, a store, an office building or an apartment building, or a structure such as Building 4033.

The military judge also instructed the members on the lesser-included offense of un-

lawful entry. Concerning the element of intent, the military judge further stated:

I have instructed you with respect to the Specification under Charge I that there is a requirement that there be the intent to commit a criminal offense therein and that particular element must be proved beyond a reasonable doubt. Direct evidence of intent is often unavailable. The accused's intent, however, may be proved by circumstantial evidence.

At a session under Article 39(a), UCMJ, 10 USC § 839(a), counsel moved to suppress 2LT H's out-of-court and in-court identifications of appellant. The litigation of this motion comprised over 100 pages of the trial record. The military judge suppressed 2LT H's in-court identification of appellant but permitted testimony of her out-of-court identification. The military judge was unable to pin counsel down about his specific objection as to the out-of-court identification and finally concluded that, since appellant was represented by counsel at the lineup, the objection was ostensibly a limited due-process challenge.

Four days after 2LT H was assaulted in her barracks, the Office of the Criminal Investigation Command (CID) conducted three lineups. These lineups consisted of appellant and five other individuals who were required to wear the same clothing as appellant, including the pile cap. Each were identified only by numbers 1–6, which changed at each lineup, although the same six individuals participated in each of the three lineups. While it was not clear whether the attacker wore the pile cap pulled down over his eyes and buttoned under his chin at the time of the incident, all six individuals in the lineup were required to wear their pile caps pulled down over their eyes and buttoned. The other five individuals in the lineup were of the same race as the accused and approximately of the same height and weight.

2LT H was not told who was going to be in the lineup and was instructed not to identify anybody unless she was "100 percent sure." When she requested to see a side profile, all six individuals were asked

to turn to the side. There is no indication that anybody in the lineup was asked to speak.

Appellant was represented by counsel at the lineup. No objection to the lineup was made; in fact, that counsel indicated in his notes that it was "[n]ot a bad lineup." Defense counsel's notes were used to cross-examine 2LT H at trial about her identification of appellant. In the first lineup, 2LT H at trial indicated she was "100 percent sure" it was not four of the six individuals. The notes reflect that she thought it could be number 3 or 4; appellant was number 4. In the second lineup 2LT H identified number 6, appellant. In the third lineup 2LT H identified number 2 or 5; appellant was number 2. 2LT H stressed a number of times she was not 100 percent certain about her identification of appellant, but as she was driven home by one of the CID agents she indicated that she was sure "in her heart" that her attacker was appellant.

To ensure the jury understood its role, the judge instructed the court members on the uncertainty or unreliability of eyewitness identification and that such testimony should be scrutinized with care, following the model instruction in the bench book [1] taken from *United States v. Telfaire*, 469 F.2d 552, 558 (D.C.Cir.1972).

Appellant did not testify at trial on the issue of guilt. Defense counsel in his opening statement tendered to the jury that

> [t]here is going to be the testimony, we expect, of Sergeant Webb's wife who is going to indicate that on the 24th of March he was home shortly—on or about 0700 hours on the day in question, which was a time prior to the alleged incident with Lieutenant [H], and on that day he came home and took a bath.[2]

Appellant's wife, however, did not testify at trial. Her absence was commented on by trial counsel in concluding his closing argument by noting:

The Government has been up front with you about the evidence that it was going to bring in, about the kind of identification, the kind of evidence there is, and the Government has lived up to its promises as given in the opening statement. Now, please think back to the opening statement delivered by the defense. In that statement they said there would be evidence that the accused was back at home by 0700. ·Did you hear any such evidence? Wouldn't that be critical evidence, cause we know exactly what time the calls were placed to the MP Station, about 7:15. You've got the transcript of the—the Stipulation of Fact on all of that. If he was back at home by 7:00 o'clock, as promised to you by the defense counsel, what happened? Where is that evidence? The defense has not lived up to its part in the proceedings, but I'm going to ask you to live up to your promises to, if you believe the evidence to be bey.ond a reasonable doubt on each or some or part of any charges, to return a verdict of guilty against the accused, Sergeant Webb, who assaulted Lieutenant [H].

## DISCUSSION

### A. Granted Issue I

■ The Supreme Court held in *Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965), "that the Fifth Amendment, in its direct application to the Federal Government, and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." The Supreme Court, however, has not held every comment by the prosecution to be a constitutional violation. It has rather examined prosecutorial comment in the context of the facts of the case. *United States v. Robinson*, 485 U.S. 25, 32, 108 S.Ct. 864, 869, 99 L.Ed.2d 23 (1988)("[W]here as in this case

---

1. Para. 7–7, Military Judges' Benchbook at 7–9 (Dept. of the Army Pamphlet 27–9 (Change 3, 15 Feb. 89)).

2. Defense gave oral notice that appellant's wife was an alibi witness.

the prosecutor's reference to the defendant's opportunity to testify is a fair response to a claim made by defendant or his counsel, we think there is no violation of the privilege."). *See also United States v. Hasting,* 461 U.S. 499, 515, 103 S.Ct. 1974, 1984, 76 L.Ed.2d 96 (1983)(Stevens, J., concurring in the judgment) ("I do not believe the protective shield of the Fifth Amendment should be converted into a sword that cuts back on the area of legitimate comment by the prosecutor on the weaknesses in the defense case.").

This principle was perhaps best illustrated by the Supreme Court's treatment of a similar factual scenario in *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). In *Lockett,* the defendant failed to testify even though her own counsel both "outlin[ed] her contemplated defense in his opening statement and ... stat[ed] to the court and jury near the close of the case that [she] would be the 'next witness.'" *Id.* at 595, 98 S.Ct. at 2960. A Fifth Amendment claim was based upon the prosecutor's repeated remarks that the evidence was "uncontradicted." The Supreme Court concluded that the prosecutor's comments did not violate the constitutional prohibition because Lockett's own counsel, rather than the prosecution, "had clearly focused the jury's attention on her silence." *Id.* at 595, 98 S.Ct. at 2959.

Unlike the scenario in *Lockett,* this case involves a prosecutor's comment on the missing testimony of a defense witness, appellant's wife, rather than the missing testimony of a defendant. According to defense counsel's opening statement, appellant's wife was to testify as to appellant's only alibi: that appellant was at home taking a bath at the time the offenses occurred. Appellant makes a Fifth Amendment claim based upon the prosecutor's remarks during closing argument.

The first question we must resolve is whether a Fifth Amendment violation has occurred because, as stated by the United States Court of Appeals for the Second Circuit, "It is well established that the government may comment on the failure of a defendant to refute government evidence or to support his own claims." *United States v. Coven,* 662 F.2d 162, 171 (1981). That court has set forth guidance in determining whether a constitutional violation has occurred:

A constitutional violation occurs only if either the defendant alone has the information to contradict the government evidence referred to or the jury "naturally and necessarily" would interpret the summation as a comment on the failure of the accused to testify.

(Quoting *United States v. Bubar,* 567 F.2d 192, 199 (2d Cir.), *cert. denied,* 434 U.S. 872, 98 S.Ct. 217, 54 L.Ed.2d 151 (1977)). *Accord United States v. Anderson,* 481 F.2d 685, 701 (4th Cir.1973) ("The test for determining whether an indirect remark constitutes improper comment on a defendant's failure to testify is: Was the language used manifestly intended to be, or was it of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify?"), *aff'd on other grounds,* 417 U.S. 211, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974).

The information at issue here is not within the knowledge of appellant alone but, rather, and more importantly, rests with appellant's wife. Additionally, the prosecutor's closing remarks add little to the impression created after the jury had been promised a defense by appellant's lawyer and told that appellant's wife would take the stand. *See Lockett v. Ohio,* 438 U.S. at 595, 98 S.Ct. at 2959. Hence, we hold that there was no Fifth Amendment violation.

 We note that the question of whether to allow comment on a missing witness is within the sound discretion of the trial court. *See United States v. Sblendorio,* 830 F.2d 1382, 1394 (7th Cir. 1987). We also note that in this case there was no motion to preclude the prosecution's argument and no objection following the argument. Therefore, the issue whether to allow comment was not squarely before the military judge. We agree, however, with the Court of Appeals for the Sev-

enth Circuit which has cautioned that, when the witness is equally available to both sides, the preferred practice is to preclude the argument rather than to leave the jury free "to speculate about the meaning of a great deal of non-evidence." *Id.* (quoting *United States v. Keplinger,* 776 F.2d 678, 703 (7th Cir.1985)).

## B. Granted Issue II

There are four possible attacks on eyewitness identification evidence—as violations of

the Fourth Amendment, *cf. Adams v. United States,* 399 F.2d 574 (D.C.Cir. 1968); the Fourteenth (and implicitly the Fifth) Amendment's Due Process Clause, *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); the Fifth Amendment's self-incrimination clause; and the Sixth Amendment right to counsel. *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

In *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), the Supreme Court concluded that due process is violated when a pretrial identification is so unnecessarily suggestive that it creates a substantial likelihood of a mistaken identification. Testing for a substantial likelihood of a mistaken identification requires a two-step analysis: First, was the pretrial identification "unnecessarily suggestive" and second, was it "conducive to irreparable mistaken identification"? *Id.* at 302, 87 S.Ct. at 1972.

■ Concerning the first issue of suggestibility, a defendant is entitled to a fair lineup, but not a lineup of look-alikes. *Compare United States v. Cole,* 449 F.2d 194, 200 (8th Cir.1971)(in determining whether the pretrial identification was suggestive the court may consider counsel's opportunity to inquire or to object), *with United States v. Allen,* 408 F.2d 1287, 1289 (D.C.Cir.1969) (allowing counsel to be present and propose changes would constitute a waiver of any objection unless the suggestions were disregarded).

Here defense counsel was present, made no objection but rather commented that it was not a bad lineup. Indeed, during argument at trial, defense counsel conceded the lineups were not suggestive.

■ However, appellant does challenge the reliability of 2LT H's identification of appellant in the lineups because of her lack of opportunity to view her assailant. Appellant further claims that the military judge abused his discretion by permitting evidence of 2LT H's out-of-court identification of appellant. As we have previously noted in *United States v. Houser,* 36 MJ 392, 397 (CMA 1993), and *United States v. Mukes,* 18 MJ 358, 359 (CMA 1984), this requires appellant to come "forward with conclusive argument" that there was an abuse of discretion.

In *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the Supreme Court established five factors to be considered in determining the reliability of identification testimony:

(1) "the opportunity of the witness to view the criminal at the time of the crime";

(2) "the witness' degree of attention";

(3) the similarity between "the witness' prior description of the criminal" and the actual description of the accused;

(4) the witness' "level of certainty" in the correctness of the identification as "demonstrated ... at the confrontation"; and

(5) the lapse "of time between the crime and the confrontation." *Id.* at 199–200, 93 S.Ct. at 382.

■ The military judge evaluated these factors at a lengthy Article 39(a) session, out of the presence of the members, and determined that the evidence was sufficiently reliable to be presented to the members for their evaluation. This sort of judicial determination outside the member's presence is precisely that deemed advisable by the Supreme Court in *Watkins v. Sowders,* 449 U.S. 341, 101 S.Ct. 654, 66 L.Ed.2d 549 (1981). The Supreme Court held in that case as follows:

Where identification evidence is at issue, however, no such special considerations justify a departure from the presumption that juries will follow instructions. It is the reliability of identification evidence that primarily determines its admissibility.

And the proper evaluation of evidence under the instructions of the trial judge is the very task our system must assume juries can perform. Indeed, as the cases before us demonstrate, the *only* duty of a jury in cases in which identification evidence has been admitted will often be to assess the reliability of that evidence. Thus the Court's opinion in *Manson v. Brathwaite*[, 432 U.S. 98, 114 n. 14, 97 S.Ct. 2243, 2253 n. 14, 53 L.Ed.2d 140 (1977) ] approvingly quoted Judge Leventhal's statement that,

> " '[w]hile identification testimony is significant evidence, such testimony is still only evidence, and, unlike the presence of counsel, is not a factor that goes to the very heart—the 'integrity'—of the adversary process.
>
> " 'Counsel can both cross-examine the identification witnesses and argue in summation as to factors causing doubts as to the accuracy of the identification—including reference to both any suggestibility in the identification procedure and any countervailing testimony such as alibi.' "

449 U.S. at 347–48, 101 S.Ct. at 658–59 (citations omitted).

■ Here the military judge instructed the jury at length about 2LT H's identification of appellant, and trial defense counsel conducted a lengthy cross-examination of her, the primary focus of which was to emphasize the unreliability of the identification. Under the facts of this case we are persuaded that the military judge did not abuse his discretion by permitting the out-of-court lineup-identification evidence to go before the members for their assessment of its reliability.

## C. Granted Issue III

Appellant asserts that the evidence is legally insufficient to prove beyond a reasonable doubt that he is guilty of housebreaking with intent to peep. Appellant charges that there is no "clear evidence" proving that he entered 2LT H's quarters to commit any crime and that finding him guilty of intent to peep involves "pure speculation." We disagree.

■ The first question for us to determine is whether the intent to be proved is appellant's intent to commit some crime as the opportunity might present itself or his intent to commit the specific crime of peeping. The question arises due to the wording of Article 130, which provides that the unlawful entry must be made with the "intent to commit a criminal offense therein." The Explanation provides the following definition of intent:

> *Intent.* The intent to commit some criminal offense is an essential element of housebreaking and must be alleged and proved to support a conviction of this offense. If, after the entry the accused committed a criminal offense inside the building or structure, it may be inferred that the accused intended to commit that offense at the time of the entry.

Para. 56c(2), Part IV, Manual for Courts–Martial, United States, 1984.

Federal Courts of Appeal have addressed similar questions with regard to state burglary statutes which involve an intent to commit "some crime." The United States Court of Appeals for the District of Columbia cited 12 jurisdictions with similar statutes, all of which have decided that the intended crime must be specified in the indictment. *United States v. Thomas*, 444 F.2d 919, 922 and n. 5 (1971). Further, the Supreme Court of North Carolina in *State v. Boyd*, 287 N.C. 131, 214 S.E.2d 14, 23 (1975), noted that an indictment for burglary may include several intents which may be submitted to the jury on alternative theories. Based upon these cases and our reading of Article 130 of the Uniform Code of Military Justice, we are persuaded that the intent which must be proved is the

intent to commit the crime stated in the specification.

We must now determine whether there is some legal and competent evidence to support the finding of guilty of housebreaking with intent to peep. Our standard for review is found in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). We must decide whether, after viewing the evidence in the light most favorable to the Government, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. This determination has two parts due to the identification issue. First, is the evidence legally sufficient to prove that appellant (and not someone else) committed the offense? Second, is the evidence legally sufficient to prove that appellant committed the offense of housebreaking with the intent to peep? In resolving the intent element we note the decision of the United States Court of Appeals for the Sixth Circuit which indicated that intent "may be inferred from the totality of circumstances" including "the nature, time, or place of" appellant's "acts before and during" the crime alleged. *See Goldman v. Anderson*, 625 F.2d 135, 137 (1980).

 We conclude that the evidence found at the scene of the crime, *i.e.*, appellant's glove, military identification card, and set of keys (including an office key that had been issued to appellant), *see* CMR unpub. op. at 2, coupled with 2LT H's line-up identification, is legally sufficient to prove that appellant was the perpetrator of the offense, whatever it was. We further note the evidence of record shows that appellant: (1) secreted himself in a storage room with a view of the shower room in the female officers' billet during the early morning hours without any apparent lawful purpose; and (2) knocked down and fled from the female officer who accidentally discovered him. Drawing all inferences in the light most favorable to the Government, we conclude that this evidence is legally sufficient to prove the offense of housebreaking with the intent to peep. Al-

though appellant presented character evidence to negate his nefarious intent, such testimony failed to persuade the members.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judge COX concur.

WISS, Judge (concurring):

Three years ago, this Court had occasion to observe:

It is black letter law that a trial counsel may not comment directly, indirectly, or by innuendo, on the fact that an accused did not testify in his defense. *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). Furthermore, he is not permitted to comment on an accused's failure to produce witnesses in his behalf. *United States v. Swoape*, 21 MJ 414 (CMA 1986)....

*United States v. Mobley*, 31 MJ 273, 279 (CMA 1990). I agree with the majority that trial counsel's argument, in context, was not a comment on appellant's failure to testify but was a comment on appellant's "failure to produce witnesses" on the issue of alibi. In light of the clear state of the record, however, which reflects that defense counsel had promised during opening argument to produce an alibi witness, trial counsel's closing remarks were fair and appropriately restrained comment in an area opened up by the defense. *See United States v. Doctor*, 7 USCMA 126, 133, 21 CMR 252, 259 (1956). Accordingly, the military judge did not abuse his discretion by not, *sua sponte*, acting to strike the argument here in question. *See generally* S. Childress and M. Davis, 2 *Federal Standards of Review* § 12.01 (Prosecutorial Misconduct) at 12–1 to 12–16 (2d ed. 1992).

GIERKE, Judge (concurring in part and dissenting in part):

I agree with the majority's resolution of Issues I and II. I disagree with the resolution of Issue III (sufficiency of evidence).

At the time appellant was discovered, the female officers were returning from physi-

cal training and appellant was hiding behind a storage room door, where he could see nothing except the storage room interior. The majority opinion incorrectly states that appellant "secreted himself in a storage room with a view of the shower room." 38 MJ at 69. In fact, he had a view only of the shower room door, and even that view was possible only if he moved out from behind the storage room door. *See* Appendix.

As the majority opinion correctly states, proof of housebreaking requires proof of the crime that the accused intended to commit. Para. 56c(2), Part IV, Manual for Courts–Martial, United States, 1984. I have no doubt that appellant entered the building illegally, but there is *no* evidence of his intent. *See United States v. Kluttz,* 9 USCMA 20, 24, 25 CMR 282, 286 (1958), *quoting Simpson v. State,* 81 Fla. 292, 87 So. 920 (1921) ("The mere breaking and entering a dwelling house is not a fact from which may be inferred that the accused intended to commit rape, or murder, or larceny, or arson, or any other felony which the pleader's fancy may induce him to charge in the indictment.")

While the majority speculates that he intended to observe undressed female officers, it is just as likely (and just as speculative) to conclude that he intended to steal personal property while the officers were at physical training. Absent proof of the crime appellant intended to commit, the evidence is legally sufficient only to support a conviction of unlawful entry in violation of Article 134, UCMJ, 10 USC § 934. *See* para. 56d(1), Part IV, Manual, *supra* (unlawful entry is lesser-included offense of housebreaking).

I cannot join in affirming a conviction of housebreaking based on pure speculation. Accordingly, I dissent from the decision as to Issue III.

**APPENDIX**

Prosecution Exhibit 5
for Identification
(FACSIMILE)