UNITED STATES, Appellee,

v.

Private Carl E. MUELLER, 003–56–1773, United States Army, Appellant.

ACMR 9300063.

U.S. Army Court of Military Review.

17 Aug. 1994.

For Appellant: Captain Christopher W. Royer, JAGC (argued); Major Michael A. Egan, JAGC (on brief); Colonel Stephen D. Smith, JAGC.

For Appellee: Captain Gregory T. Baldwin, JAGC (argued); Colonel Dayton M.

Cramer, JAGC, Lieutenant Colonel James L. Pohl, JAGC, Captain R.W. Clark, JAGC (on brief).

Before GRAVELLE, LANE and JOHNSTON, Appellate Military Judges.

## OPINION OF THE COURT

### PER CURIAM:

Contrary to his pleas, the appellant was convicted by a general court-martial composed of officer members of rape, forcible sodomy, and assault in violation of Articles 120, 125, and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 925 and 928 (1988). The convening authority approved the adjudged sentence of a dishonorable discharge, five years of confinement, and forfeiture of all pay and allowances.

The appellant asserts that the military judge abused his discretion by admitting evidence of a pretrial lineup identification which is alleged to have been unnecessarily suggestive.[1] We disagree and affirm.

On 18 July 1992, Specialist (SPC) C was at a well-lighted club on post. After drinking some alcohol, she met and danced with the appellant for approximately nine minutes. Thereafter, she accepted the appellant's offer to walk her back to her barracks room. Along the way, they stopped, talked, and kissed on the lawn of an on-post chapel. Although it was dark, she was able to see the appellant's face. As they were kissing, the appellant attempted to touch her breasts. When she told him to stop, he knocked her down by striking her in the face. He then held her down, pulled down her pants, anally and orally sodomized her, and raped her.

After the appellant had finished his assault, SPC C returned to her room. Specialist C did not immediately report the assault, but instead responded to queries about her bruised face by saying that she had fallen down.

Late in the evening of 18 July 1992, the appellant approached his platoon sergeant. At that time, the appellant's right hand was injured and he was panting. He claimed that he had just witnessed an attempted gang rape of a woman by three men outside an on-post club. The appellant then told the platoon sergeant that he had prevented the rape by single-handedly attacking, fighting with, and driving off the three men, but had lost his military identification (ID) card in the process.

Because the platoon sergeant feared that the victim of the gang rape might recover the appellant's ID card and mistakenly believe that the appellant was one of the rapists, the platoon sergeant accompanied the appellant to the scene of the alleged rape with a flashlight to search for the missing ID card. At the scene of the alleged rape and altercation, the platoon sergeant found neither an ID card nor any sign of a scuffle. In an effort to protect the appellant from either being punished for the loss of his ID card or being mistaken as one of the assailants, the platoon sergeant arranged for the appellant to execute a written statement to document his supposedly heroic actions.

When the appellant's commander heard about the incident, he considered recommending the appellant for an award. However, when the appellant began relating inconsistent versions of his role in preventing the alleged gang rape, the commander became suspicious and contacted the military police. The military police were unable to find any evidence to support the appellant's story about the gang rape.

On 21 July 1992, after considerable pressure from her chain of command, SPC C admitted to investigators that her injuries had been inflicted upon her when she was raped by a single assailant on 18 July 1992. Not surprisingly, investigators soon identified the appellant as a suspect in the rape of SPC C.

On 24 July, SPC C was asked a series of questions by investigators. In response to one of the questions, she replied that she did

1. At the invitation of the Commandant, The Judge Advocate General's School, and without objection of the parties, the court heard oral argument in this case at Charlottesville, Virginia, on 24 June 1994. Approximately 250 reserve judge advocates, along with members of the staff and faculty, attended the argument.

not know whether or not her assailant had a sunburn or a tan. She also told the investigator that her assailant was a male caucasian, about five feet eleven inches to six feet tall, with a strong build, no glasses, and no facial hair.

On 27 July, SPC C was asked to view a "lineup" of six males who were of the same race, general height, build, dress, and haircut. Because the appellant was a suspect, he was selected to be in the lineup along with five other soldiers from his unit. The appellant was the most tanned person in the lineup and the only person who had visible sweat stains under his arms. At the first viewing opportunity, SPC C became upset, avoided looking at the lineup, and immediately ran from the observation room. At the second viewing, she recognized the appellant as her assailant, but was afraid to tell the investigators. At the third viewing, she picked the appellant but was afraid to say that she was "positive" that he was her assailant.

At trial, the defense filed a timely motion in limine to suppress the lineup identification. After extensive litigation, the military judge denied the suppression motion and made specific findings of fact.

## PRETRIAL LINEUP IDENTIFICATION

■ "[D]ue process is violated when a pretrial identification is so unnecessarily suggestive that it creates a substantial likelihood of a mistaken identification." *United States v. Webb*, 38 M.J. 62, 67 (C.M.A.1993). "It is the likelihood of misidentification" which serves "as the basis for exclusion" of unreliable identification evidence. *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 381, 34 L.Ed.2d 401 (1972).

"Testing for a substantial likelihood of a mistaken identification requires a two-step analysis: First, was the pretrial identification 'unnecessarily suggestive' and second, was it 'conducive to irreparable mistaken identification'?" *Webb*, 38 M.J. at 67 (quoting *Stoval v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967)).

■ We find that the pretrial identification was not unnecessarily suggestive under the circumstances of this case. Although the appellant's profuse sweating may have been somewhat suggestive of his physical discomfort or his nervousness, it did not suggest that he was to be picked as the assailant. There was no evidence that the appellant's sweating was caused by police misconduct. Most important, SPC C testified she never noticed the appellant's sweat stains at the lineup because she was concentrating on his face.[2] Likewise, the simple fact that the appellant was the most tanned person in the lineup was not in any way suggestive because SPC C had executed a sworn statement, prior to the lineup, in which she stated that she did not know whether or not her attacker had a sunburn or a tan.

■ Assuming, arguendo, that the lineup was "unnecessarily suggestive," there was no danger that the lineup in this case was conducive to irreparable mistaken identification. The test for determining whether an identification process was conducive to irreparable mistaken identification, involves an application of the test for reliability. This reliability test was promulgated by the United States Supreme Court in *Neil v. Biggers*, 409 U.S. at 198, 93 S.Ct. at 381, and implemented by the United States Court of Military Appeals in *United States v. Webb*, 38 M.J. at 67. This "test" involves an examination of the following factors:

(1) "the opportunity of the witness to view the criminal at the time of the crime";

(2) "the witness' degree of attention";

(3) the similarity between the "witness' prior description of the criminal" and the actual description of the accused;

(4) the witness' "level of certainty" in the correctness of the identification as "demonstrated ... at the confrontation"; and

(5) the lapse "of time between the crime and the confrontation."

---

**2.** Although the appellant asserts that SPC C had been "briefed" by the trial counsel to say that she did not notice the sweat, her stated concentration on the faces is logical and credible in that her prior opportunities to observe the attacker involved the close face to face contacts of dancing, talking, and kissing.

*Id.*[3]

█ In this case, SPC C had a good "opportunity to view her attacker" when she danced with him in a well-lighted room, walked with him, sat with him, talked to him, kissed him, and was sexually assaulted by him. She paid him a high "degree of attention" by socializing with him. Although she could not remember what color clothes he was wearing or whether or not he had a sunburn or a tan, there was a distinct "similarity" between her "prior description of the criminal" and the actual appearance of the appellant.[4] Although SPC C was initially afraid to say that she was "positive" that the appellant was her assailant, she nonetheless displayed a high "degree of certainty" in her pretrial identification.[5] Additionally, there was a relatively short nine-day "lapse of time" between the crime and the lineup.

Accordingly, appellate defense counsel have failed to come forward with a conclusive argument that the military judge abused his discretion in admitting evidence of the pretrial lineup identification. *Webb*, 38 M.J. at 67.

Furthermore, we see no evidence in the record that would lead us to disagree with the military judge's determination that SPC

C was credible. We note that the trial defense counsel took ample advantage of numerous opportunities to "cross-examine the identification witness," to present evidence, and to "argue in summation as to factors causing doubts as to the accuracy of the identification—including reference to both any suggestibility in the identification procedure and any countervailing testimony such as alibi." *Manson v. Brathwaite*, 432 U.S. 98, 113–14 n. 14, 97 S.Ct. 2243, 2252–53 n. 14, 53 L.Ed.2d 140 (1977).

We also note that the disputed identifications were not the only evidence presented against the appellant at trial. An unbiased witness testified that he saw the appellant and SPC C together at the club on the night of the attack. Other witnesses testified that on the night of the attack the appellant appeared nervous, had an injured hand, and gave conflicting statements regarding his whereabouts and the source of his injury.

█ We are convinced that there was no substantial likelihood of mistaken identification in this case. Specialist C identified the appellant at a fair pretrial lineup and she had an "independent basis" for her subsequent in-court identification.[6]

3. We note that the following additional factors may also be considered as being indicative of reliability: the witness' exercise of unusual care in making the observation, the witness' prompt identification of the accused at the first confrontation, the fairness of the lineup, and the presence of a perpetrator with a distinct physical characteristic. *See* Colonel Francis A. Gilligan and Major Alan K. Hahn, *Eyewitness Identification in Military Law*, 110 Military Law Review 1, 37 (1985) (discussion of factors supporting or negating a finding of independent basis for an in-court identification). Likewise, the following additional factors may negate a finding of reliability: a discrepancy between the witness' pretrial description of the perpetrator and the actual appearance of the accused, a prior identification of another person by the witness prior to the lineup, and a failure of the witness to identify the accused on a prior occasion. *Id.* at 36.

4. Prior to the lineup, SPC C gave investigators a physical description which closely matched that

of the appellant and had told them that she thought her assailant's name was "Miller."

5. The mere fact that SPC C was unwilling to say she was "positive" at first does not render her identification inadmissible. She viewed the lineup on two of the three opportunities, visually identified the appellant both times, and verbally identified him once to the investigators.

6. Because of our findings regarding the pretrial lineup identification, we need not decide the admissibility of the in-court identification. Assuming, however, that the lineup identification was inadmissible, we find that an application of the *Biggers* factors would indicate that there was clear and convincing evidence that an independent basis for the in-court identification existed in this case. *See United States v. Crews*, 445 U.S. 463, 473 n. 18, 100 S.Ct. 1244, 1251, 63 L.Ed.2d 537 (1980); *United States v. Fors*, 10 M.J. 367, 369 (C.M.A.1981).

We have considered the remaining assertions of error, to include those raised personally by the appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find them to be without merit.

The findings of guilty and the sentence are affirmed.