BAKER, Judge,
with whom RYAN, Judge, joins (dissenting):
I. SUGGESTIVE IDENTIFICATIONS
In United States v. Rhodes, 42 M.J. 287, 290 (C.A.A.F.1995), we adopted the two-part test established by the Supreme Court for assessing suggestive identifications: (1) whether a pretrial identification was unnecessarily suggestive; and (2) if the pretrial identification was unnecessarily suggestive, whether there was a substantial likelihood of misidentification. Thus, regarding both in-court and out-of-court identifications, there is a critical relationship between suggestiveness and misidentification. Neil v. Biggers, 409 U.S. 188, 198, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Moreover, it is the substantial likelihood of misidentification that violates the accused’s right to due process, not the suggestive methodology alone. Id. Conversely, if a lineup is not suggestive, then under the Rhodes test, the identification should not be excluded on the grounds of likely misidentification. As the Supreme Court long ago concluded, “reliability is the linchpin in determining the admissibility of identification testimony.” Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).
Caution is prudent when addressing a show-up. “Generally, a showup by its very nature is suggestive” because it can increase the risk of misidentification. Rhodes, 42 M.J. at 290. Where, for example, a victim of crime is uncertain as to the identity of her assailant, but remembers generic details about height, weight, and race, there is a risk that a photograph of a single individual bearing those characteristics will prompt a victim to “identify” the person in the photograph as the perpetrator based on generic, and thus unreliable, characteristics alone. Such a risk is heightened in cases where law enforcement officials wittingly or unwittingly suggest to the victim that they have “caught the suspect,” as well as in situations where the victim wishes to please investigators. The risk is compounded where a victim is later called upon and recalls specific details of the perpetrator without discerning between her *293 original recollection of the suspect and her subsequent observation of a photograph.
But that is not this case. The victim in this case, Ms. T-B, did not describe a generic person of African American descent, which was then validated and reinforced by a specific photograph. Rather, the victim described an actual person with distinct and personalized detail. She did so immediately following her assault. She did so before law enforcement detained Appellant, and she did so before seeing the up-close show-up picture of Appellant. In addition, the victim identified discreet aspects of the accused’s appearance that were not depicted in the photograph she was shown by German law enforcement; and did so before seeing the picture. Moreover, as Appellant’s counsel acknowledged at oral argument, her prior description of her assailant was accurate in every respect. In other words, the picture reinforced the victim’s prior recollection of her assailant; it did not create that recollection. This was not a situation where the identification was “all but inevitable under the circumstances.” Biggers, 409 U.S. at 197, 93 S.Ct. 375 (citation and quotation marks omitted). Thus, whether or not the use of a show-up photo lineup in this case might be viewed as suggestive, it did not, and could not raise “ ‘a very substantial likelihood of irreparable misidentification.’” Id. at 198, 93 S.Ct. 375 (quoting Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)).
II. ABUSE OF DISCRETION
It is true that a military judge is accorded substantial discretion regarding factual findings. We have often stated that “[o]ur standard of review is to ‘give due deference’ to the judge’s findings of fact and accept them ‘unless unsupported by the evidence of record or ... clearly erroneous.’” United States v. Salazar, 44 M.J. 464, 471 (C.A.A.F.1996) (alteration in original) (citation omitted); see also United States v. Armstrong, 54 M.J. 51, 54 (C.A.A.F.2000); United States v. Taylor, 47 M.J. 322, 325 (C.A.A.F.1997). However substantial the grant of discretion might be, it is not a blind grant. “[A] finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.” United States v. Martin, 56 M.J. 97, 106 (C.A.A.F.2001) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)) (quotation marks omitted). An abuse of this particular grant of discretion may occur when the trial judge has considered incorrect factors or has failed to consider necessary factors. 2 Steven Childress & Martha Davis, Federal Standards of Review § 7.06, at 7-69 (4th ed. 2010); see, e.g., Motor Vehicle Manufacturers Ass’n v. State Farm, Ins. Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983).
In reaching his conclusion that the pretrial and in-court identifications would be suppressed, the military judge in this case abused his discretion in three ways. First, the military judge omitted critical aspects of the victim’s testimony from his review of the Biggers factors. This testimony was uncontested and uncontroverted. Thus, it needed to be addressed in one way or another— counted or discounted — especially where it facially contradicts the military judge’s own conclusions. For example, in addressing the third Biggers factor (the accuracy of the witness’s prior description) the military judge stated “Ms. [T-B], gave a somewhat accurate description of the accused when he was apprehended — muscular, black male, with a slight mustache and wearing bicycle attire ... [b]asieally ... a black male, wearing bicycle attire, riding along [a] trail.” However, the record reflects that Ms. T-B gave a detailed description of her assailant and it was accurate in every detail provided. Among other things, she accurately described the color of his shirt, his pants, the gap in his teeth, the style of his bike, the nature of his sunglasses and of his helmet.
By further example, the military judge stated that “No evidence was presented as to the likelihood of other black males riding their bikes on this trail.” In fact, the record reflects that immediately following the incident German police encountered two separate groups on the bike path each of which indicated that they had seen a person fitting *294 the victim’s description and the direction in which he was riding. Neither group indicated that they had seen any other person fitting that description.
Thus, if the military judge was correct that the victim’s description was generic, two groups on the bike path indicated that there was only one person on the bike path they had seen who fit that description. Of course, the victim’s description was not generic, but rather specific, and thus the issue is not whether there were other black males on the trail, but other black males fitting the victim’s description of her assailant.
Military judges may differ in how they weigh these particular factors in light of the totality of the circumstances without abusing their discretion; however, they are not free to ignore facts in the record that should inform that analysis.
Second, the military judge abused his discretion by misapplying the law to the facts and concluding that Ms. T-B “had minimal opportunity and capacity to view the rider” and that her “degree of attention on the rider was minimal.” The record reflects that the victim noticed her assailant repeatedly while taking her walk, here presented chronologically:
“I saw a bicycle driver pass by on top of the trail.”
“I saw him. He drove by. I was still about 20 to 30 meters away from the trail.”
“[T]hen I saw this bicycle rider again, and he was doing something on the bicycle. I was about 20 or 30 or 40 meters away and I saw him kneeling in front of his bike and doing something to the bike.”
“I arrived closer to him about 7 or 8 meters away from him, and then I saw— then he looked at me, and he got back on his bike and drove away from me.”
“At some point, I saw him again. He was standing next to bushes next to the trail, and it looked to me as someone being on the side there and urinating.”
“[T]hen when I arrived closer he turned the face — his head towards me and then I passed.”
“I walked on and at some point he drove by me.”
When asked by the trial counsel whether she saw his face, she responded: Yes, I did.”
“I moved on, and at some point I saw him again in the bushes, standing in the bushes.”
“I thought he has a weak bladder because he was standing there again, but when I came closer he turned around. He had his penis in his hand, and came running towards me and was standing in front of me.”
“30 or 40 centimeters when he was very close to me.”[1]
Based on these encounters the victim identified the color of his attire, the nature of his facial hair, and the gap in his teeth. In my view, this does not reflect “minimal opportunity” to view the rider or “minimal” attention on the part of the victim. Neither, in my view, is this a matter upon which reasonable minds might differ, in which case we should defer to the military judge.[2]
*295 Finally, the military judge did not follow the structure contemplated by Rhodes, Big-gers, and Bmthwaite, for addressing show-ups that might raise the risk of misidentification. In particular, after reviewing the Big-gers factors the military judge concluded without more that “the manner in which the photo identification was conducted was unnecessarily suggestive and conducive to a substantial likelihood of misidentification.” The military judge’s conclusion does not indicate why, in this case and context, the show-up was unreasonably suggestive, aside from the fact a show-up format was used, especially where the victim described her perpetrator in unique detail before she was shown Appellant’s picture and where that description included unique personal characteristics not depicted in the picture.
More importantly, the military judge’s ruling never addresses the relationship between suggestiveness and misidentification. It may be that the Government did not carry its burden of persuasion on this point, but there is no analysis as to how the show-up used in this case, on this record, was “conducive to a substantial likelihood of misidentification.” In particular, the military judge did not discuss or explain why a misidentification was likely where the record indicates the following: police responded immediately to the report of the incident on the trail; the trail was searched within the hour; two separate groups on the trail, in addition to the victim, had seen a person meeting the victim’s description of her assailant and independently identified the direction the assailant was biking; neither group identified any other person meeting this description; the assailant was arrested at the end of the trail wearing the clothing the victim described; and, the victim identified unique features of the accused’s face before being shown the close-up. Whether or not the show-up was suggestive in this case, the Rhodes/Biggers/Brathwaite rationale requires that the relationship between suggestiveness and a “substantial likelihood of misidentification” be drawn. A persuasive argument might exist, but it is an abuse of discretion to provide no analysis at all. Therefore, I respectfully dissent.

. On an appeal under Article 62, Uniform Code of Military Justice, 10 U.S.C. § 862 (2006), it is axiomatic that a court of criminal appeals is bound by the facts found by the military judge, unless those facts are clearly erroneous. However, that court is not bound by a military judge's application of law to facts. In this case, the parties dispute whether the lower court found additional facts when it concluded that the victim observed the accused for "at least one to two minutes" as opposed to "the few moments” found by the military judge. United States v. Baiter, No. ARMY 20100841, 2011 CCA LEXIS 52, at *13, 2011 WL 891345, at *4 (A.Ct.Crim.App. Mar. 7, 2011). The same dispute exists regarding the court’s conclusion that the victim observed the accused five times as opposed to the military judge's finding of four times. Id., 2011 WL 891345, at *5. In my view, the variance between these “facts” does not change the analysis. The issue is whether the victim’s identification of the accused was reliable and whether the show-up was unreasonably suggestive and conducive to a very substantial likelihood of mis-identification. Here, the critical "facts” are found in the testimony of the witness herself, not in the manner in which that testimony was characterized by the military judge and the Court of Criminal Appeals.

. Thus, the majority’s focus on whether the victim was "a 'casual or passing observer’ ” or a " 'specially trained’ police officer” is misplaced. United States v. Baker, 70 M.J. 290 (C.A.A.F. *295 2011) (quoting Brathwaite, 432 U.S. at 115, 97 S.Ct. 2243). The question is whether the victim had a qualitatively meaningful opportunity to observe the perpetrator or whether that opportunity was "minimal” as the military judge concluded. The answer is found in the victim’s testimony.