UNITED STATES, Appellee

v.

Anthony RHODES, Private First Class
U.S. Marine Corps, Appellant.

No. 94–0679.
CMR No. 90 2458.

U.S. Court of Appeals for
the Armed Forces.

Argued March 8, 1995.

Decided Aug. 23, 1995.

288

For Appellant: *Lieutenant D. Jacques Smith*, JAGC, USNR (argued); *Lieutenant A.B. Lustre*, JAGC, USNR.

For Appellee: *Major Laura L. Scudder*, USMC (argued); *Colonel J. Composto*, USMC, *Commander S.A. Stallings*, JAGC, USN (on brief); *Colonel T.G. Hess*, USMC.

*Opinion of the Court*

CRAWFORD, Judge:

1. Appellant was convicted, contrary to his pleas, of attempted rape (2 specifications), rape, robbery, sodomy by force, burglary (3 specifications), communicating a threat (4 specifications), assault and battery, and attempted robbery, in violation of Articles 80, 120, 122, 125, 129, and 134, Uniform Code of Military Justice, 10 USC §§ 880, 920, 922, 925, 929, and 934, respectively. The convening authority approved the sentence[1] of a dishonorable discharge, confinement for life, total forfeitures, and reduction to E–1. He suspended the forfeiture of allowances for 60 months from the date of his action. The Court of Military Review[2] affirmed the findings and sentence on December 20, 1993. We granted review on the following issue:[3]

> WHETHER THE MILITARY JUDGE ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS ANY IN-COURT IDENTIFICATION OF APPELLANT AS THE ASSAILANT BY MRS. S BECAUSE IT WAS BASED ON AN ILLEGAL IDENTIFICATION NEAR THE TIME OF THE ATTACK.

FACTS

2. At approximately 3:30 a.m., November 19, 1989, Mrs. S was sleeping in her mobile home in a rural area of Beaufort County, South Carolina. After her husband, a snorer, left to sleep in another room, she was awakened when a man opened the back door and came into her bedroom. He told her to be quiet or he would kill her. Then he obtained material to gag her and proceeded with his assault upon her. The whole episode took about 20 minutes. There was no light in the room, but there was a light outside 50–100 feet from the trailer that was so bright that the S's had previously asked that it be removed. Mrs. S had a "good look" at appellant. In some instances he was 3 inches away from her. The suspect was a tall black man, 5 feet 10 inches to 6 feet tall, wearing a tan suit, having a short haircut, and being kind of hunched over. When he questioned her, he would take the gag out of her mouth and have her respond in a low voice. She noticed he had an unusual "eyebrow expression." On one occasion pursuant to his request "he kissed me on the lips." It was at this time she noticed that he had full lips and beer on his breath.

3. After the assault, she woke her husband and they drove to a neighbor's trailer to call the police. She told the police that she had been assaulted and described her assailant as 5 feet 10 to 6 feet with full lips and a short, Marine-like, haircut, who was hunched over and had unusual eyebrows with beer on his breath. A few minutes later the police arrived at the trailer court, and she gave the officer a similar description of the assailant. The officer told her, "I have a call." Then he stated: "Would you like to come with me? They apprehended someone on the side of the road." The police had stopped a suspect, a tall black man with a tan suit, walking along a nearby road surrounded by marshes. Mrs. S agreed, and she and her husband accompanied the police officer to the scene of the stop. While in the car at the scene with the highlights shining on the suspect, she told her husband, "[T]hat's him." She was afraid and did not "want to get out of the

---

1. General Court–Martial Order No. 9–91 dated 9 April 1991, should reflect that the sentence was adjudged on 16 September 1990.

2. *See* 41 MJ 213, 229 n. * (1994).

3. *See* 41 MJ 340 n. 2 (1995), for disposition of the second granted issue (41 MJ 119).

car," but she said, "He's got the same tan suit on. He's standing kinda like in a hunched over way" with similar "eyebrow expression, with his eyebrows raised and his eyebrows kinda opened up." She was "certain" of her identification of appellant as the perpetrator, because she was very attentive at the time of the crime.

4. She testified that at the Article 32, UCMJ, 10 USC § 832, investigation, she had identified appellant as the individual who "resembled the man." While she may not have positively identified appellant at the Article 32 investigation, she testified at trial that is what she had meant to do.

■ 5. The arresting officer, Mitchell W. Lucas, testified that appellant had the smell of alcohol on his breath and was a little unsteady when he was stopped. While the judge found the showup[4] "suggestive," he also found that it would not lead to "an unreliable identification" at trial, citing the following factors in support:

(a) Mrs. [S] had ample time and ability to view her assailant in the bedroom of her mobile home in the early morning of 19 November 1989. Mrs. [S] saw the black male intruder's face at close range for a total period of about 10 minutes under illumination through the bedroom windows from the nearby yard light.

(b) Despite the assailant's direction to her not to look at him, Mrs. [S]'s attention was focused on the assailant as a result of his threat to rape her, his kissing her, his holding his hand over her mouth and nose, his binding and gagging her, and his conversing with her.

(c) Although somewhat general, Mrs. [S]'s description of her assailant matched that of the accused. She reported to the Sheriff's Department officers that the assailant was a black male, approximately six feet tall, having short hair, and wearing a tan suit. When apprehended approximately a mile away, 20–30 minutes after the reported unlawful entry into the [S] mobile home, the accused was wearing the same style tan suit and his description matched that Mrs. [S] had given police officers.

(d) Mrs. [S] was certain when she identified the accused as her assailant when she saw him at the show-up. She recognized the accused's clothing as being the same style and color suit which the assailant was wearing, as well as his facial expressions, facial features, conformation of the lips, short hair, and particular slouching stance as being the same as her assailant. Likewise, based upon her perceptions of the assailant on 19 November 1989, she was positive of her identification of the accused as her assailant when she saw him at the Article 32 investigation on 12 January 1990 and during the Article 39(a) [, UCMJ, 10 USC § 839(a) ] session for the litigation of these suppression motions on 29 May 1990.

(e) The interval between the commission of the offense and the identification of the accused at the show-up by Mrs. [S] was no more than 20–30 minutes.

(2d document at front of Vol. IV of Record)

6. Citing the record of trial, the defense argues that the rape occurred in the early morning and the victim did not look directly at appellant. The room was not lit, and an outside yard light was 50 to 100 feet away. Thus, the defense concludes that Mrs. S did not have a good opportunity to view appellant. The defense further argues that the roadside identification could not have been more suggestive as appellant was drenched with water, straw, and mud. Art. 32 investigation at 27. His lip was bleeding, and he appeared intoxicated. *Id.* at 28. It was

---

4. A "showup" describes a confrontation in which a single suspect is presented to the witness who is asked whether this is the person who committed the crime. *See Neil v. Biggers*, 409 U.S. 188, 195, 93 S.Ct. 375, 380, 34 L.Ed.2d 401 (1972); Black's Law Dictionary 1380 (6th ed. 1990); E. Loftus & J. Doyle, *Eyewitness Testimony: Civil and Criminal* 157 (2d ed. 1987); *but see United States v. Wade*, 388 U.S. 218, 229, 87 S.Ct. 1926, 1938, 18 L.Ed.2d 1149 (1967)("The pretrial confrontation for purposes of identification may take the form of a lineup, also known as an 'identification parade' or 'showup,' as in the present case, or presentation of the suspect alone to the witness, as in *Stovall v. Denno*," 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967)).

because of this disheveled appearance and the shining headlights on him that he was identified by the victim. The defense asserts that this initial roadside identification tainted all subsequent identifications. Final Brief at 6–8.

## DISCUSSION

■ 7. While "four possible attacks on eyewitness identification evidence" exist, appellant alleges only a violation of the Due Process Clause of the Fifth Amendment. The standard of review requires this Court to determine if there was an abuse of discretion by the military judge in allowing an in-court identification. *United States v. Webb*, 38 MJ 62, 67 (CMA 1993).

■ 8. Mil.R.Evid. 321(a)(1) and (d)(2),[5] Manual for Courts–Martial, United States, 1984, adopt a two-prong test based upon Supreme Court case law for determining admissibility of eyewitness identification. *See, e.g., Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199

(1967); *United States v. Webb, supra; United States v. Fors*, 10 MJ 367 (CMA 1981). First, was a pretrial identification unnecessarily suggestive? *Stovall v. Denno, supra* (hospital showup held imperative, and thus permissible, because victim was in critical condition). Second, if the pretrial identification was "unnecessarily suggestive," was it conducive to a substantial likelihood of misidentification? *Manson v. Brathwaite, supra. See also United States v. Fors*, 10 MJ at 372 (suggestive identification because accused only person in both lineups). An "unnecessarily suggestive" pretrial identification does not preclude a reliable in-court identification. *Id.*

■ 9. Generally, a showup by its very nature is suggestive. However, it is not enough merely to establish that a showup is suggestive. Due process is not violated unless there is an "unnecessarily suggestive" pretrial identification that leads to a substantial likelihood of mistaken identify at the time of trial. An immediate identification while the witness' memory is still fresh and when there are no grounds for holding a suspect

---

5. The pertinent part of Mil.R.Evid. 321 provides:

**Rule 321. Eyewitness identification**

(a) *General rule.*

(1) *Admissibility.* Testimony concerning a relevant out of court identification by any person is admissible, subject to an appropriate objection under this rule, if such testimony is otherwise admissible under these rules....

(2) *Exclusionary rule.* An identification of the accused as being a participant in an offense, whether such identification is made at the trial or otherwise, is inadmissible against the accused if:

\* \* \*

(B) Exclusion of the evidence is required by the Due Process Clause of the Fifth Amendment to the Constitution of the United States as applied to members of the armed forces. Evidence other than an identification of the accused that is obtained as a result of the unlawful lineup or unlawful identification process is inadmissible against the accused if the accused makes a timely motion to suppress or an objection to the evidence under this rule and if exclusion of the evidence is required under the Constitution of the United States as applied to members of the armed forces.

(b) *Definition of "unlawful."*

(1) *Lineups and other identification processes.* A lineup or other identification process is "unlawful" if the identification is unreliable. An identification is unreliable if the lineup or other identification process, under the circumstances, is so suggestive as to create a substantial likelihood of misidentification.

\* \* \*

(d) *Burden of proof.* When a specific motion or objection has been required under subdivision (c)(3), the burden on the prosecution extends only to the grounds upon which the defense moved to suppress or object to the evidence. When an appropriate objection under this rule has been made by the defense, the issue shall be determined by the military judge as follows:

\* \* \*

(2) *Unreliable identification.* When an objection raises the issue of an unreliable identification, the prosecution must prove by a preponderance of the evidence that the identification was reliable under the circumstances; provided, however, that if the military judge finds the evidence of identification inadmissible under this subdivision, a later identification may be admitted if the prosecution proves by clear and convincing evidence that the later identification is not the result of the inadmissible identification.

has been held not to be unnecessary under the Due Process Clause of the Fifth Amendment. *Johnson v. Dugger,* 817 F.2d 726, 729 (11th Cir.1987); *State v. Perkins,* 141 Ariz. 278, 289, 686 P.2d 1248, 1259 (1984). It is important to have a one-on-one confrontation take place immediately after a crime while memories are fresh so innocent individuals may be released. *Id.* An immediate confrontation permits investigative activities to be refocused if there is no identification. *State v. Collette,* 199 Conn. 308, 310–11, 507 A.2d 99, 101 (1986).

■ 10. Assuming arguendo that there was an "unnecessarily suggestive" showup on the road, we will examine the second prong to determine whether there was a reliable identification at trial. The following factors support a reliable identification: "opportunity to view" the actual perpetrator of the offense, *Manson v. Brathwaite,* 432 U.S. at 114, 97 S.Ct. at 2253; *Neil v. Biggers,* 409 U.S. at 199, 93 S.Ct. at 382; "the witness' degree of attention," 409 U.S. at 199, 93 S.Ct. at 382; a short "length of time between the crime and the confrontation," 409 U.S. at 199–200, 93 S.Ct. at 382; *see* 432 U.S. at 115, 97 S.Ct. at 2253; no discrepancy between offender's description and appellant, 432 U.S. at 115, 97 S.Ct. at 2253; and little likelihood of other individuals in the area at the time of the offense matching the description given by the victim.

■ 11. Mrs. S had about 20 minutes to look at the perpetrator. While she did not constantly observe him face-to-face, they were face-to-face when he questioned her. She replied to his questions when he took the gag out of her mouth. This viewing took place in the light from an outside light 50 to 100 feet away. Mrs. S's eyes had adjusted for a nighttime viewing. Thus, it was not a totally darkened room. Her description of the offender—a tall black man with a tan suit and dress shoes—fit exactly the individual who was apprehended a short time later. As to the degree of attention, she testified that she was very attentive at the time of the crime. There were no discrepancies between her description and the physical appearance of appellant. Lastly, the identification was made shortly after the crime on a rural road at approximately 4:00 a.m. At that time it is highly unlikely that someone would be walking down the road in a suit and dress shoes.

12. Thus, we conclude that the reliability of the in-court identification outweighs the suggestiveness of the showup. *Cf. United States v. Evans,* 484 F.2d 1178, 1186–87 (2d Cir.1973).

13. While a lineup with the appropriate number of fillers certainly would have been fairer than a showup, this does not preclude an in-court identification in this case. Based upon the totality of the circumstances, we hold that the judge did not abuse his discretion by allowing Ms. S to identify appellant in court.

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges COX, GIERKE, and WISS concur.