*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————

### UNITED STATES
Appellee

**v.**

### Andrew J. CRISWELL, Specialist
United States Army, Appellant

**No. 18-0091**

Crim. App. No. 20150530

Argued September 13, 2018—Decided November 16, 2018

Military Judges: Matthew A. Calarco and Steven Walburn

For Appellant: *Captain Steven J. Dray* (argued); *Colonel Mary J. Bradley*, *Lieutenant Colonel Christopher D. Carrier*, and *Captain Cody Cheek* (on brief); *Lieutenant Colonel Tiffany M. Chapman*, *Major Julie L. Borchers*, and *Captain Matthew L. Jalandoni*.

For Appellee: *Captain Natanyah Ganz* (argued); *Colonel Tania M. Martin, Lieutenant Colonel Eric K. Stafford,* and *Major Cormac M. Smith* (on brief); *Captain Catherine M. Parnell*.

Amicus Curiae for Appellant: *Rachel L. Goot* (law student) (argued); *Deborah Ogali* (law student) and *J. Andrew Kent*, Esq. (supervising attorney) (on brief) — Fordham University School of Law.

Amicus Curiae for Appellee: *Margaret Tomlinson* (law student) (argued); *Wendy Chiapaikeo* (law student) and *Thomas H. Lee*, Esq. (supervising attorney) (on brief) — Fordham University School of Law.

Judge MAGGS delivered the opinion of the Court, in which Chief Judge STUCKY and Judge RYAN joined. Judge OHLSON filed a separate dissenting opinion, in which Judge SPARKS joined.

———————

Judge MAGGS delivered the opinion of the Court.[1]

---

[1] We heard oral argument in this case at Fordham University School of Law, New York, New York, as part of the Court's Project Outreach. This practice was developed as a public awareness pro-

A military judge, sitting as a general court-martial, convicted Appellant, contrary to his pleas, of one specification of making a false official statement, two specifications of abusive sexual contact, one specification of assault consummated by a battery, and one specification of indecent language in violation of Articles 107, 120, 128, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 907, 920, 928, 934 (2012 & Supp. I 2014). The military judge sentenced Appellant to a dishonorable discharge, confinement for two years, and reduction to the grade of E−1. The military judge credited Appellant with one day of credit against the sentence of confinement. The convening authority approved the sentence as adjudged. The United States Army Court of Criminal Appeals (ACCA) affirmed, with one judge dissenting. *United States v. Criswell*, No. ARMY 20150530, 2017 CCA LEXIS 686, 2017 WL 5157737 (A. Ct. Crim. App. Nov. 6, 2017).

We granted review on the issue of whether the military judge abused his discretion in denying a defense motion to suppress the accusing witness's in-court identification of Appellant. We conclude that the military judge did not abuse his discretion, and we therefore affirm the judgment of the Army Court.

## I. Legal Background

Eyewitness identifications are problematic in any criminal justice system. On one hand, eyewitness identifications are often the most compelling evidence linking a suspect to a crime. But on the other hand, experience has shown that eyewitness identifications are not always accurate. Eyewitnesses can be mistaken because of anxiety, surprise, lack of focus, or other factors at the time of the crime. As the Supreme Court has recognized, "[t]he vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification." *United States v. Wade*, 388 U.S. 218, 228 (1967). In the military justice system, the President has addressed these competing con-

gram to demonstrate the operation of a federal court of appeals and the military justice system.

cerns in Military Rule of Evidence (M.R.E.) 321.[2] M.R.E. 321 is a complex provision that addresses testimony about out-of-court eyewitness identifications (such as those which might have occurred in a police station before trial) and in-court eyewitness identifications (such as those in which a witness points to the accused sitting at the defense table).

M.R.E. 321(a) states a rule that generally makes relevant testimony concerning eyewitness identifications admissible. But M.R.E. 321(b) creates an exception to the rule, providing that testimony about eyewitness identifications is inadmissible if the identifications: (1) were "the result of an unlawful lineup or other unlawful identification process"; or (2) their exclusion is "required by the Due Process Clause of the Fifth Amendment to the Constitution of the United States as applied to members of the Armed Forces." M.R.E. 321(c)(1) provides that a lineup or other identification process is unlawful if the process "is so suggestive as to create a substantial likelihood of misidentification." This rule codifies the two part-test established by the Supreme Court in *Neil v. Biggers,* 409 U.S. 188 (1972). *United States v. Baker*, 70 M.J. 283, 288 (C.A.A.F. 2011) (citing *United States v. Rhodes*, 42 M.J. 287, 290 (C.A.A.F. 1995)).

In *Baker*, this Court applied a prior version of M.R.E. 321 by asking two questions.[3] The first question was whether the identification process at issue was "unnecessarily suggestive." *Id.* at 288 (citation omitted). Assuming that it was, the second question was whether the process was "conducive to a likelihood of misidentification." *Id.* (citation omitted). In

---

[2] Appellant was tried in August 2015. The version of M.R.E. 321 applicable to his trial is found in the *Supplement to Manual for Courts-Martial, United States, Military Rules of Evidence* (2012 ed.). Executive Order 13,825 will slightly change the punctuation of M.R.E. 321(a). *See* Exec. Order No. 13,825, 83 Fed. Reg. 9889, 10,092 (Mar. 1, 2018) (effective Jan. 1, 2019).

[3] The Court in *Baker* applied the version of M.R.E. 321 that appears in the *Manual for Courts-Martial, United States* (2008 ed.). Although an amended version of M.R.E. 321 applicable to this case has a different wording and organization, we believe that it is still appropriate to ask the same questions that we asked in *Baker*.

answering the second question, the Court considered five factors identified by the Supreme Court in *Biggers* and *Manson v. Brathwaite*, 432 U.S. 98 (1977). The five factors (commonly called the "*Biggers* factors") are: (1) the opportunity of the witness to view the perpetrator at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the perpetrator; (4) the witness's demonstrated level of certainty during the confrontation; and (5) the elapsed time between the criminal act and the confrontation. *Manson*, 432 U.S. at 114 (citing *Biggers*, 409 U.S. at 199−200). The Court in *Baker* then "weighed" against these factors "the corrupting effect of the suggestive identification itself." *Baker*, 70 M.J. at 291 (internal quotation marks omitted) (quoting *Manson*, 432 U.S. at 114). The purpose of the weighing was to "determine whether under the totality of the circumstances the identification was reliable even though the confrontation procedure was suggestive." *Id.* (citing *Biggers*, 490 U.S. at 199).

M.R.E. 321(d) identifies the burdens of proof in motions to suppress both initial identifications and subsequent identifications. Subdivision (d)(6)(B)(i) provides: "When an objection raises the issue of an unreliable identification, the prosecution must prove by a preponderance of the evidence that the identification was reliable under the circumstances." Subdivision (d)(6)(B)(ii) then states: "When the military judge determines that an identification is the result of an unreliable identification, a later identification may be admitted if the prosecution proves by clear and convincing evidence that the later identification is not the result of the inadmissible identification." The Court in *Baker* concluded that a military judge had not abused his discretion in deciding to suppress an in-court identification on the ground that the in-court identification would be "significantly impacted" by a prior unreliable identification. 70 M.J. at 292 (internal quotation marks omitted). In arriving at this conclusion, the Court noted that "even if reasonable minds could differ about the application of the facts to the law, we cannot say that the military judge's decision to suppress the identifications was arbitrary or fanciful." *Id.*

## II. The Military Judge's Findings of Fact
## and Conclusions of Law

In ruling on Appellant's motion to suppress an in-court identification of him by the accusing witness, Specialist AM, the military judge made the following oral findings of fact:

> In November 2014, Specialist [AM] went to a party at the events center near Riverside Drive, Clarksville, Tennessee where there was a party to celebrate Austin Peay [State University]'s homecoming.

> Specialist [AM] went to the party with Specialist Nasser Al-Shamesi and some other friends who were also Soldiers.

> While at the party, Specialist [AM] became separated from her friends when a step team started dancing. Specialist [AM] began walking around the edge of the room looking for her friends. While Specialist [AM] was walking along the edge of the room, an African-American male approximately 5'10" to 6' in height, early 20s, black jacket, dark jeans, black and white bandana laying on his head, grill piece[4] in his mouth approached her and allegedly made sexually suggestive comments, grabbed her head with both hands on her cheeks and forced her to kiss him, touched her thigh with his penis, and caused her to touch his penis . . . with her hand.

> At the time of the alleged comments and alleged assault, the room was very crowded, very loud, and very dark. The events alleged occurred approximately 20 feet away from the DJ booth. There were moving lights coming from the DJ booth. The light did not illuminate much unless it shown directly on an object or other thing such as a person. If someone was in the room was within 5 feet of another person when the light from the DJ booth went across that other person's face, they would be able to clearly see the other person's face. At the time Specialist [AM] alleges she was assaulted, her assailant was only centimeters away from her.

---

[4] From the ACCA's opinion, we understand a "grill piece" to be a type of jewelry worn over the teeth. *Criswell*, 2017 CCA LEXIS 686, at *4, 2017 WL 5157737 at *2.

Specialist [AM]'s alleged assailant eventually grabbed her by the wrist and led her toward a closet, which they never entered but at that time, her assailant forced her to kiss him again after which he walked away.

Specialist [AM] later found Specialist Al-Shamesi near the bathrooms by the entrance at which time she indicated she wanted to leave. Specialist Al-Shamesi said he wanted to go to the bathroom first, which he did leaving Specialist [AM] to wait for him outside the bathrooms near the entrance. There was some light coming from the entrance.

At this time, Specialist [AM]'s alleged assailant approached her again and asked her why she was standing there alone. She said she was waiting for her boyfriend and he responded, "how about I take you in there and show you how a real man [expletive deleted] you" or words to that effect.

The light coming from the entrance was on them and coming from behind the alleged assailant. This gave Specialist [AM] the ability to see his face more clearly than she could earlier from the light coming from the DJ booth. . . . As soon as Specialist Al-Shamesi came out of the bathroom Specialist [AM] went outside with him and told him what happened and eventually described her alleged assailant. When Specialist Al-Shamesi heard the description of the alleged assailant, he was reminded of a person he saw earlier in the evening that was there with his friends described as Stephens and Connor.

The room at the events center was darker than the courtroom today. There were more than 50 people at the party maybe as many as 100 and a large percentage were African American. There were many African-American males between 5'10" and 6 feet tall in their early 20's.

Later the next day, at the [United States Army Criminal Investigation Command (CID)] office, Specialist Al-Shamesi showed a photo from his phone to Special Agent Pflaume. Special Agent Pflaume showed the photograph to Specialist [AM] who identified the photograph as the person who assaulted her the night before. Special Agent Pflaume showed Specialist [AM] a single photo-

graph[,] and it was of the accused. Special Agent
Pflaume did not arrange a photo array or present
Specialist [AM] any other options but to say that
the photograph she was seeing was or was not the
man who assaulted her. Specialist [AM] IDed [i.e.,
identified] the man in the photograph shown to her
by Special Agent Pflaume immediately and without
hesitation. Specialist [AM] made an in court identi-
fication of the accused as the man who assaulted
her at an Event Center near Riverside Drive in
Clarksville, Tennessee in November of 2014.

On the basis of these findings of fact, the military judge
concluded that testimony about Specialist AM's identifica-
tion of Appellant in the CID office would have been sup-
pressible under M.R.E. 321(c)(1) and (d)(6)(B)(i) if the Gov-
ernment had sought to introduce it. But the military judge
denied Appellant's motion to suppress an in-court identifica-
tion of Appellant by Specialist AM under M.R.E. 321(c)(1)
and (d)(6)(B)(ii). Additional details about the military judge's
rulings appear below. The ACCA affirmed this ruling on ap-
peal. *Criswell*, 2017 CCA LEXIS 686, at *24, 2017 WL
5157737 at *9.

## III. Discussion

This Court reviews a military judge's ruling on a motion
to suppress an eyewitness identification for abuse of discre-
tion, viewing the evidence in the light most favorable to the
prevailing party. *See Baker*, 70 M.J. at 287−88. The parties
agree that a military judge "abuses his discretion when his
findings of fact are clearly erroneous, the court's decision is
influenced by an erroneous view of the law, or the military
judge's decision on the issue at hand is outside the range of
choices reasonably arising from the applicable facts and the
law." *United States v. Irizarry*, 72 M.J. 100, 103 (C.A.A.F.
2013) (citations omitted) (internal quotation marks omitted).
Applying this standard in this case, we do not undertake a
de novo analysis of whether the in-court identification
should have been admitted. Instead, we focus on Appellant's
objections to the military judge's findings of fact, view of the
law, and conclusions in applying the law to the facts.[5] As in

---

[5] In preparing their briefs and oral arguments, counsel can
help the Court most if they not only identify the applicable stand-

*Baker*, we again observe that the "standard of review . . . in this case is critical to the outcome." 70 M.J. at 287.

## A. Whether the Military Judge's Findings of Fact Were Clearly Erroneous

A finding of fact is clearly erroneous when there is no evidence to support the finding, *see, e.g., United States v. Siroky*, 44 M.J. 394, 395 (C.A.A.F. 1996), or when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed," *United States v. Martin*, 56 M.J. 97, 106 (C.A.A.F. 2001) (internal quotation marks omitted) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

In his brief and reply brief, Appellant does not argue that any findings of fact by the military judge were "clearly erroneous."[6] At oral argument, however, Appellant asserted that the military judge erroneously found five facts: (1) Specialist AM had identified her assailant as being between five feet ten inches and six feet tall; (2) her assailant was in his early 20s; (3) he was wearing a black jacket; (4) he was wearing dark jeans; and (5) he had had a "grill piece" in his mouth. *See* Recording of Oral Argument at 3:56–4:17, *United States v. Criswell*, 18-0091 (C.A.A.F. Sept. 13, 2018). Appellant contends that the military judge's findings were "clearly erroneous" because Specialist AM never told anyone those facts before participating in the photo identification at the CID office. *See id.* at 3:31–5:20. In Appellant's view, discussed further below, any description that Specialist AM made after the photo identification is legally irrelevant.

We disagree with Appellant's reasoning. Under the standards quoted above, findings of fact are clearly

---

ard of review but also explicitly frame their arguments in terms of the standard of review.

[6] Appellant argues that two factual statements in the CCA's opinion are "clearly erroneous." Final Brief on Behalf of Appellant at 10 n.7 & 17 n.10, *United States v. Criswell,* No. 18-0091, (C.A.A.F. Mar. 14, 2018). In this appeal, however, we are concerned with the military judge's findings of fact and not the ACCA's characterization of the evidence. *See Baker*, 70 M.J. at 288.

erroneous if they lack sufficient support in the record. *See Martin*, 56 M.J. at 106. Legal relevance is not part of these standards. During oral argument, Appellant conceded that Specialist AM testified as to each of these facts at trial. *See Criswell* Oral Argument Recording at 5:04–5:06. Having reviewed the relevant portions of the record of trial, we conclude that the military judge's findings quoted above are not clearly erroneous. We address the separate question of whether the challenged facts are legally relevant below.

**B. Whether the Military Judge's View of the Law Was Erroneous**

Appellant does not argue that the military judge's general understanding of M.R.E. 321 was erroneous. In accordance with our approach in *Baker*, the military judge expressly recognized that the admissibility of an eyewitness identification under M.R.E. 321(c) depends on two questions. The military judge, paraphrasing our wording in *Baker*, asked: "was there a pretrial identification unnecessarily suggestive and if it was, if so, was there a substantial likelihood of a misidentification later?" In addressing the first of these questions, the military judge properly assumed, in the absence of contrary proof by the Government, that the identification at the CID office was unnecessarily suggestive. *See Simmons v. United States*, 390 U.S. 377, 383−84 (1968) (recognizing that a misidentification may occur if the police display only one photograph to a witness, as the CID agent did in this case); *see also Baker*, 70 M.J. at 288–89 (same). In answering the second question, the military judge analyzed each of the five *Biggers* factors in detail. He also considered "all the surrounding circumstances." The military judge also correctly understood that under M.R.E. 321(d)(6)(B)(ii), if an initial identification is inadmissible, "a later identification may be admitted if the prosecution proves by clear and convincing evidence that the later identification is not the result of the inadmissible identification."

Appellant, however, asserts that the military judge misunderstood two very specific aspects of the law. First, Appellant contends that the military judge incorrectly believed that he could determine whether Specialist AM's in-court identification was the result of the inadmissible identifica-

tion at the CID office without looking at the photograph that the CID agent had shown Specialist AM. In Appellant's view, a military judge generally must examine any photograph used to make a prior identification before determining that the government has met its burden under M.R.E. 321(d)(6)(B)(ii). Appellant reasons that, without viewing the photograph in this case, the military judge could not determine whether Specialist AM's in-court identification was based on what she had seen at the party or instead whether it was based on what she had seen at the CID office.

We disagree. The rule suggested by Appellant finds no support in the text of M.R.E. 321(d)(6)(B)(ii). Appellant also has cited no constitutional authority for his suggested rule. Indeed, such a rule would be contrary to the decisions of the Supreme Court and other federal courts. In *Simmons*, 390 U.S. at 382−89, the Supreme Court concluded that a federal district court did not abuse its discretion in denying a motion to suppress an in-court identification on grounds that it was the result of a prior suggestive identification based on photographs. The Court reached this conclusion even though the photographs shown to the witnesses were not produced by the government. *See id.* at 387; *accord United States v. Scriber*, 499 F.2d 1041, 1047 (D.C. Cir. 1974) (upholding admission of an in-court identification even though "the Government was unable to make the photographic array [that was previously] displayed to identifying witnesses available at trial"); *see also United States v. Russell*, 532 F.2d 1063, 1067−68 (6th Cir. 1976) (same). To be sure, without producing the photographs used in a suggestive prior identification, the government in some cases will have difficulty proving by clear and convincing evidence that "the later identification is not the result of the inadmissible identification" as required by M.R.E. 321(d)(6)(B)(ii). But the government may be able to meet this burden by other means.

Second, Appellant asserts that the military judge incorrectly believed that he could consider descriptions of Appellant that Specialist AM made after her interview in the CID office in deciding whether her in-court identification of Appellant was the result of the inadmissible identification at the CID office. Appellant believes that under M.R.E.

321(d)(6)(B)(ii), the military judge could consider only the very limited descriptions that Specialist AM made before her interview in the CID office.

Again, we disagree. The suggested limitation of what the military judge may consider finds no support in the text of M.R.E. 321(d)(6)(B)(ii). Appellant also has cited no cases supporting such a view. In addition, we note that in *Simmons*, the Supreme Court looked at the strength of the eyewitnesses' testimony in court to determine whether their testimony was the result of an earlier suggestive photograph. 390 U.S. at 385−86. While a military judge may choose to accord greater weight to statements made by a witness before the witness has seen a suggestive photograph, there is no rule prohibiting the military judge from considering subsequent descriptions of the accused in applying M.R.E. 321(d)(6)(B)(ii).

Finally, in our own review of the record, we have noted one additional issue concerning the military judge's view of the law that we believe merits discussion. In *Baker*, as we have described above, this Court took a further step after analyzing the five *Biggers* factors. Specifically, this Court "weighed" against these factors "the corrupting effect of the suggestive identification itself." *Baker*, 70 M.J. at 291 (internal quotation marks omitted) (quoting *Manson*, 432 U.S. at 114). In reviewing the trial transcript in this case, we note that the military judge did not expressly describe his "weighing" of the *Biggers* factors against the effects of the suggestive CID office identification. This omission raises the question whether, therefore, the military judge's decision was influenced by an erroneous view of the law.

We conclude that the military judge's omission of an express discussion of weighing the *Biggers* factors against the suggestiveness of the initial identification does not indicate that the military judge had an incorrect view of the law for several reasons. First, Appellant does not contend, either in his briefs or his oral argument that the military judge misunderstood this aspect of the M.R.E. 321 analysis. Second, we presume in the absence of clear evidence to the contrary, that military judges know the law and follow it. *United States v. Mason*, 45 M.J. 483, 484 (C.A.A.F. 1997). Third, the point of the weighing process was to "determine whether

under the totality of the circumstances the identification was reliable even though the confrontation procedure was suggestive." *Baker,* 70 M.J. at 291 (citing *Biggers*, 490 U.S. at 199). In this case, the military judge emphasized that he had considered "all the surrounding circumstances" in determining that the in-court identification was reliable. Finally, we note that in *Baker*, the military judge made a similar but slightly different omission in his analysis, but we did not construe that as an error of law.[7]

**C. Whether the Military Judge's Conclusions Were Outside the Range of Reasonable Choices**

Appellant's remaining arguments essentially challenge the conclusions that the military judge drew when applying the law to the facts. Under the abuse of discretion standard—because the military judge did not make clearly erroneous findings of facts and did not exhibit a misunderstanding of the law—we are limited to considering whether the military judge's conclusion with respect to any issue "is outside the range of choices reasonably arising from the applicable facts and the law." *Irizarry*, 72 M.J. at 103 (citation omitted) (internal quotation marks omitted). Under this deferential standard, we see no error.

The first *Biggers* factor is the opportunity to view the perpetrator at the time of the crime. 409 U.S. at 199. At the party, Specialist AM was confronted not once, but twice. During the second confrontation, Specialist AM was able to

---

[7] In *Baker*, the military judge did not separately first ask whether the identification was unnecessarily suggestive and then second use the *Biggers* factors to determine whether the identification was nonetheless reliable. Instead, the military judge relied on "the *Biggers* factors to determine whether the identification was 'unnecessarily suggestive' as well as whether it was 'conducive to a substantial likelihood of misidentification.'" *Baker*, 70 M.J. at 288 (quoting *United States v. Baker*, 2011 CCA LEXIS 52, at *13–18, 2011 WL 891345, at *4–6 (A. Ct. Crim. App. Mar. 7, 2011)). Although we noted the unorthodox conflation of the two questions, we nonetheless concluded that "the military judge provided a detailed ruling evidencing an accurate understanding of the *Biggers* factors and their application to the facts on the record." *Id.* at 289. We therefore gave deference to his ruling. *See id.*

identify her assailant quickly as the same man who had assaulted her earlier. The military judge concluded that during these two confrontations, Specialist AM was "in the presence of her assailant for a significant amount of time" and could see her assailant's face "clearly" in the light from the DJ booth and "even more clearly" in the light from the bathroom. Appellant acknowledges that the military judge's conclusion is not based on clearly erroneous findings of fact. But Appellant argues that the military judge should have given more weight to Specialist AM's testimony that the party was "almost pitch black," that it was "very hard to see," that she could not see her friends, and that she apparently did not see the bold writing on Appellant's shirt. Appellant also suggests that the military judge did not take into account the possibility that her assailant may have been wearing a disguise. In applying the abuse of discretion standard, the question is not whether conflicting evidence—such as the evidence about visibility at the party—might have been weighed differently. The question is only whether the military judge made a decision outside of the range of reasonable choices. *Irizarry*, 72 M.J. at 103. Viewing the relevant evidence in the light most favorable to the Government, we conclude he did not.

The second *Biggers* factor is "the witness'[s] degree of attention." 409 U.S. at 199. The military judge concluded that Specialist AM was "extremely attentive to her assailant's features during the time that she was in his presence." Appellant disputes this conclusion. He argues that Specialist AM's only description of him before viewing the photograph at the CID office was not detailed. In addition, Appellant emphasizes that although Specialist AM said that she could identify him in court because of his facial features, she did not identify or describe the particular features she recognized. Appellant also notes that Specialist AM failed to notice that Appellant had gained thirty pounds between the time of the party and the time of the trial.[8] Appellant fur-

---

[8] The record does not actually establish that Appellant gained thirty pounds before trial. Defense counsel asked Specialist AM at trial if she had noticed a thirty-pound weight gain, but defense counsel did not produce any evidence to show that this weight gain had occurred.

ther argues that Specialist AM would have had difficulty being attentive given the amount of stress that she was under while being assaulted. Again, we have already concluded that the military judge was not limited to considering only statements made before seeing the CID photo. We cannot say that the military judge failed to make a reasonable conclusion when we view the evidence in the light most favorable to the Government.

The third *Biggers* factor is "the accuracy of the witness'[s] prior description" of the alleged perpetrator. 409 U.S. at 199. The military judge concluded Specialist AM gave a "very detailed description of her assailant" and that Specialist Al-Shamesi determined whom she was describing "based on the accuracy of [her] description." Appellant argues that this conclusion is incorrect. He points out that before Specialist AM spoke to the CID office, the only description that she had made identified her assailant as a black man wearing a bandana, and she did not mention he was wearing a grill piece. We agree that Specialist AM's initial description of her assailant to Specialist Al-Shamesi was not exceptionally detailed. However, as explained above, Specialist Al-Shamesi interrupted Specialist AM before she could say anything more about her assailant. We see no evidence in the record that this initial description lacked detail because Specialist AM's memory of the event was imprecise. Appellant additionally asserts that when Specialist AM later gave a more detailed description, there were discrepancies between her account and a photograph of Appellant taken at the party. She said that he was wearing a black and white bandana and a black shirt while the photograph showed him wearing a blue hat and shirt with bold graphics. Again, we have rejected the suggestion that the military judge could consider only the descriptions made by Specialist AM before seeing the photograph at the CID office. We also observe that the military judge expressly stated that he considered the photograph, and therefore he knew of the discrepancies. In these circumstances, the military judge's conclusion that Specialist AM's description was "accurate" was within his discretion to make.

The fourth *Biggers* factor is "the level of certainty demonstrated by the witness at the confrontation." 409 U.S.

at 199. The military judge concluded that Specialist AM's identification of Appellant "when seeing the picture, was immediate and certain." Appellant argues that this conclusion is incorrect because the only testimony on point came from a CID agent. While the CID agent testified to the speed of her identification of Appellant, he never expressly addressed her level of confidence. The precise testimony was as follows:

> Q. . . . Approximately how long would you say that it took for her to make a response after you showed her the photo?
>
> A. Mere seconds, sir. I mean, it was—she didn't look at it and take her time. It was quite fast.
>
> Q. And did she say anything else about it?
>
> A. No, not just other than that she identified that person from the incident that occurred earlier.

In this testimony, the CID Agent did not expressly say that Specialist AM was "certain" or "confident" when she quickly identified Appellant from the photograph. But viewing the facts in the light most favorable to the Government, *see United States v. Piren*, 74 M.J. 24, 28 (C.A.A.F. 2015), an inference that she was certain from the speed of her identification is not unreasonable. While speed does not always equate with certainty, it was within the military judge's discretion to conclude that it did in this case.[9] *See United States v. Crews*, 445 U.S. 463, 473 & n.18 (1980) ("attach[ing] particular significance" to the fact that a witness identified the perpetrator "without hesitation" when upholding the trial court's decision that a courtroom identification rested on independent recollection).

Appellant does not contest the military judge's conclusion with respect to the fifth *Biggers* factor, which is "the length of time between the crime and the confrontation." 409 U.S. at 199-200. The military judge concluded that "the time between the crime and the confrontation which was less than

---

[9] We recognize that a witness's certainty in testifying does not prove that the witness is testifying accurately. A witness may, in good faith, hold a belief that is contrary to the actual facts. We decide only that the military judge did not abuse his discretion in addressing the fourth *Biggers* factor.

24 hours a very short amount of time leaving little opportunity for Specialist [AM] to forget whatever she remembered about her assailant and therefore be persuaded by seeing only a single picture." We agree that this conclusion was not an abuse of discretion.

Appellant, however, argues that the military judge abused his discretion with respect to other factors not listed in *Biggers* and *Manson*. Appellant contends the military judge failed to consider the "likelihood of other individuals in the area at the time of the offense matching the description given by the victim." *Rhodes*, 42 M.J. at 291. Appellant also asserts that the military judge did not give sufficient weight to the fact that this case "involved a highly stressful, violence-threatening, and cross-racial crime occurring in minimal lighting with a partially disguised assailant."

Although we agree with Appellant that the inquiry under M.R.E. 321 is not limited to the five *Biggers* factors, we see no reason to believe that the military judge overlooked or gave insufficient weight to the additional factors that Appellant mentions.[10] Defense counsel made extensive arguments to the military judge about the minimal lighting and the assailant's attire, and the military judge expressly addressed both of these factors in his findings of fact. The military judge knew the race of Specialist AM from her testimony and specifically addressed the race of her assailant in his findings of fact. The military judge made findings regarding the percentage of African Americans attending the party and the number who were roughly the same height as Appellant. The military judge also described in his findings of fact the stressful confrontations between Specialist AM and her assailant. And in announcing his final conclusion, the military judge said:

> The Court considered the environmental factors and the description given by the alleged victim, in this case, and given all the surrounding circumstances the alleged victim's description is not so far

---

[10] Although we do not reach the issue of waiver, we note that defense counsel did not expressly argue at trial that the "cross-racial" nature of this crime made Specialist AM's identification unreliable.

> removed from . . . what one might expect, again,
> given the evidence known to the Court, at this
> time, that that in and of itself the discrepancies
> raised by the defense on cross-examination in and
> of themselves so concern the Court as to disallow
> the in court identification.

Given the military judge's express statement that he had considered "all the surrounding circumstances," and no reason for believing that he did not, we cannot conclude that the military judge abused his discretion.

In a separate line of argumentation, Appellant contends that the military judge in the end was simply wrong to conclude that the Government had proved by clear and convincing evidence that the photograph at the CID office did not "taint" Specialist AM's subsequent in-court identification in light of Specialist AM's testimony. Appellant notes that Specialist AM testified that she could recognize Appellant based on his facial features, the shape of his head, and the shape of his body that she observed at the party. But Appellant argues that she in fact may have identified him based on the picture at the CID office. Appellant points out that Specialist AM did not describe any recognizable "facial features" prior to seeing the photo and did not provide any testimony during her in-court identification about which "facial features" she recognized from nine months earlier. Appellant also argues that Specialist AM could not have assessed the shape of his head at the party because a bandana "cloaked" its shape. In addition, Appellant asserts that Specialist AM would have had a limited ability to assess the size of his body at the party because he was wearing a jacket and that Appellant did not look the same in court because he purportedly weighed thirty pounds more at the time of trial than he did at the party.

We disagree. As explained above, no rule required the military judge to consider only the features that Specialist AM had described before the identification at the CID office. In addition, Appellant does not cite evidence to support his speculation about the extent to which the bandana and coat might have concealed the shape of Appellant's face and body at the time of the party or how much his purported weight gain changed his appearance. Accordingly, we determine

that the military judge's conclusion on this issue was not "outside the range of choices reasonably arising from the applicable facts and the law." *Irizarry*, 72 M.J. at 103 (citation omitted) (internal quotation marks omitted).

## IV. Conclusion

We conclude that the military judge did not abuse his discretion in denying Appellant's motion to suppress Specialist AM's in-court identification.

## V. Judgment

The decision of the United States Army Court of Criminal Appeals is affirmed.

Judge OHLSON, with whom Judge SPARKS joins, dissenting.

Justice Brennan once famously observed: "There is almost *nothing more convincing* than a live human being who takes the stand, points a finger at the defendant, and says 'That's the one!'" *Watkins v. Sowders*, 449 U.S. 341, 352 (1981) (Brennan, J., with whom Marshall, J., joined, dissenting) (emphasis in original) (citation omitted) (internal quotation marks omitted). This scenario set forth by Justice Brennan closely echoes what happened at trial in the instant case, and notably, Appellant subsequently was convicted contrary to his pleas. Thus, it is apparent that the decision by the military judge to admit into evidence the victim's in-court identification of Appellant as her assailant was important. Moreover, it is apparent that in reaching his decision to admit this evidence, the military judge abused his discretion because: "(1) he predicate[d] his ruling on findings of fact that [were] not supported by the evidence of record; (2) he use[d] incorrect legal principles; [and] [(3)] he fail[ed] to consider important facts." *United States v. Commisso*, 76 M.J. 315, 321 (C.A.A.F. 2017) (citation omitted). Finally, it is apparent that this abuse of discretion was not harmless beyond a reasonable doubt. Therefore, I respectfully dissent.

## I. Applicable Law

Military Rule of Evidence (M.R.E.) 321 governs eyewitness identifications. This rule provides that an in-court identification of an accused as the perpetrator of an offense is "inadmissible if," in relevant part, this identification violates "the Due Process Clause of the Fifth Amendment to the Constitution of the United States as applied to members of the Armed Forces." M.R.E. 321(b)(2).

When, as here, the military judge determines that an out-of-court identification "is the result of an unreliable identification," an in-court "identification may be admitted if the prosecution proves by clear and convincing evidence that the later identification is not the result of the [prior] inadmissible identification." M.R.E. 321(d)(6)(B)(ii). Placing this burden on the government is appropriate because, as the Supreme Court has noted, if an impermissibly suggestive out-of-court identification must be excluded at trial, then "a courtroom identification *based on* such a lineup logically ha[s] to be excluded as well." *Watkins*, 449 U.S. at 349 (em-

phasis added) (citing *United States v. Wade*, 388 U.S. 218 (1967)).

The Supreme Court has stated that "convictions based on eyewitness identification at trial following a [police-arranged[1]] pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). Stated more succinctly, "[i]t is the likelihood of misidentification which violates a defendant's right to due process." *Neil v. Biggers*, 409 U.S. 188, 198 (1972).[2]

The Supreme Court has enunciated, and we have adopted, a two-step process for determining whether an in-court identification is inadmissible under the Due Process Clause. *Id.*; *see also United States v. Baker*, 70 M.J. 283, 288 (C.A.A.F. 2011); *United States v. Rhodes*, 42 M.J. 287, 290 (C.A.A.F. 1995). First, military judges must determine whether the "pretrial identification [procedure was] unnecessarily suggestive." *Rhodes*, 42 M.J. at 290. Second, if this pretrial procedure *was* unnecessarily suggestive, military judges must next examine whether the improper procedure was "conducive to a substantial likelihood of misidentification" at trial. *Id.*

In the instant case, we are only concerned with the second inquiry because the military judge found, and the Government does not dispute, that the pretrial identification procedure used by the United States Army Criminal Investigation Command (CID) was unnecessarily suggestive. To determine whether an improperly conducted out-of-court identification procedure "leads to a substantial likelihood of mistaken identi[t]y at the time of trial,"[3] military judges must determine "whether under the 'totality of the circum-

---

[1] *See Perry v. New Hampshire*, 565 U.S. 228, 232 (2012) (holding that due process is violated only when there is "improper law enforcement activity").

[2] "The due process check for reliability … comes into play only after the defendant establishes improper police conduct." *Id.* at 241. Because the unduly suggestive identification procedure in this case was a result of law enforcement's actions, this case involves improper police conduct.

[3] *Rhodes*, 42 M.J. at 290.

stances' the [in-court] identification was reliable even though the [pretrial] confrontation procedure was suggestive." *Biggers*, 409 U.S. at 199; *Baker*, 70 M.J. at 291. In other words, "reliability is the linchpin in determining the admissibility of identification testimony." *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977); *see also Watkins*, 449 U.S. at 347 ("It is the reliability of identification evidence that primarily determines its admissibility.").

The Supreme Court has held that "the factors to be considered in evaluating the likelihood of misidentification *include*" the following five factors:

> [(1)] the opportunity of the witness to view the criminal at the time of the crime, [(2)] the witness' degree of attention, [(3)] the accuracy of the witness' prior description of the criminal, [(4)] the level of certainty demonstrated by the witness at the confrontation, and [(5)] the length of time between the crime and the confrontation.

*Biggers*, 409 U.S. at 199–200 (emphasis added); *see also Brathwaite*, 432 U.S. at 114; *Rhodes*, 42 M.J. at 291. This non-exhaustive list has become known as the "*Biggers* factors." *Baker*, 70 M.J. at 288.

It is important to underscore that the *Biggers* factors are intended to assess the *independent reliability* of the in-court identification; they are not intended to determine the likely *correctness* of the in-court identification once it is viewed in the broader context of the corroborating evidence implicating the accused in the offense. *Brathwaite*, 432 U.S. at 116 (noting that the *Biggers* factors serve as "indicators of [the witness's] *ability* to make an accurate identification" and stating that *evidence corroborating the identification "play*[ed] *no part in" the court's reliability analysis* (emphasis added)).

The Supreme Court has further held that "[a]gainst these [*Biggers*] factors is to be weighed the corrupting effect of the suggestive identification itself." *Id.* at 114; *Baker*, 70 M.J. at 291. That is, military judges must first determine the "indicators of [an accused's] ability to make an accurate identification," and then must determine whether the factors that favor a witness's ability to make an accurate identification are "outweighed by the corrupting effect of the challenged identification itself." *Brathwaite*, 432 U.S. at 116. Thus, only "if the indicia of reliability are strong enough to

outweigh the corrupting effect of the police-arranged suggestive circumstances [should] the identification evidence … be admitted" for the factfinder to "ultimately determine its worth." *Perry*, 565 U.S. at 232.

## II. Analysis

In my view, the military judge committed three errors in this case.[4] First, he made clearly erroneous findings with respect to three of the five *Biggers* factors. Second, he failed to articulate whether he considered two applicable factors as part of a required totality of the circumstances analysis. And third, he did not weigh the *Biggers* factors against the corrupting effect of the suggestive CID pretrial identification procedure. I now turn to a discussion of each of these errors.

### A. Clear Error

The military judge clearly erred in evaluating three of the *Biggers* factors. First, he erred in evaluating the second *Biggers* factor—the victim's degree of attentiveness at the time of the offense—by relying squarely on the victim's detailed *trial* testimony about her assailant's appearance. The military judge found that the victim's *trial* "testimony demonstrates that she was extremely attentive to her assailant's features, during the time that she was in his presence." However, the victim's *in*-court description of her assailant's features was tainted by the previous highly suggestive *out*-of-court identification process. Stated differently, in terms of the independent reliability of an in-court identification, the degree of attention of a witness at

---

[4] Although I disagree with his ruling, this opinion is not intended as a criticism of the military judge. This is a complex area of the law as reflected by the split in our own Court in the instant case and by the length of our respective opinions. The military judge did not have the luxury of engaging in extensive research and analysis before reaching his conclusion. Trial defense counsel was within the rules set forth by the President to file the motion on the day the court-martial was to begin because pleas had not been entered. M.R.E. 321(d)(2). *See United States v. Williams,* 23 M.J. 362, 366 (C.M.A. 1987) (holding that local rules of practice may not override the rules established by the President in the Military Rules of Evidence). However, trial defense counsel should carefully consider whether such belated filings best serve their clients' interests as early filings will allow the military judge additional time to research complex legal areas such as the one at issue here.

the time of an offense primarily should be gauged by the level of detail provided by the witness *before* any tainted identification process—not after. Thus, in the instant case, the military judge's focus on the witness's trial testimony about the assailant's features does not, standing alone, provide sufficient support for his finding that the victim was "extremely attentive to her assailant's features" at the time of the offense.

Second, the military judge clearly erred in evaluating the third *Biggers* factor—the accuracy of the *prior* description—by finding that the victim "gave a very detailed description of her assailant." The record shows that the victim twice described her assailant before CID's suggestive identification procedure took place, but neither of those descriptions could be fairly characterized as "very detailed." Specifically, the victim (1) told her friend that the assailant was "a black male, who was wearing a black and white bandana flat on top of his head";[5] and (2) informed CID that her assailant was "wearing all black, with a black bandana" and was "between 5'10" and 6', in [his] early 20's." In light of the fact that the incident occurred at a very large college party where the vast majority of the attendees were African American, neither description can be said to contain any compelling distinguishing characteristics except for the assailant's apparel—and importantly, Appellant was not wearing this same apparel when the victim identified him in the out-of-court photograph[6] or at trial. The military judge therefore

---

[5] It is not relevant that the victim *may have* been able to provide a more detailed description of her assailant if the victim's friend had not stopped her from elaborating further. I first note that the victim's rudimentary description of her assailant was not truncated by any action of the defense—it was the victim's own friend who caused her to stop talking. Second, in bearing the burden of establishing the admissibility of the in-court identification pursuant to the provisions of M.R.E. 321(d)(6)(B)(ii), the Government is stuck with the facts that are in the record—it cannot rely upon mere suppositions. And finally, based on the victim's CID statement twenty-four hours later, it is apparent that she did not have any particularly compelling additional details to provide about her assailant's appearance—even when she was not being interrupted.

[6] The victim described this photograph as "like a profile picture from Facebook." The CID agent described the photograph as

clearly erred in finding the victim's description of her assailant to be "very detailed."**7**

Third, the military judge erred with respect to the fourth *Biggers* factor—the victim's degree of certainty about the out-of-court identification—by finding that the victim identified Appellant "with certainty." The record reflects that neither the victim nor the CID agent testified about the certainty of the identification made by the victim. Instead, the military judge seemed to equate the immediacy of the victim's identification with certainty. However, these are separate concepts. Indeed, it would be troubling if the speed with which a witness identifies a suspect in the course of a highly suggestive identification process that contains only *one* photograph could be heavily relied upon as evidence of the accuracy of that identification. Thus, I conclude that in the absence of testimony about the certainty of the victim's out-of-court identification, the military judge clearly erred in his findings regarding the fourth *Biggers* factor.

## B. Application of the Law

In addition to these clearly erroneous factual findings, the military judge misapplied the law in two ways.

### 1. Totality of the Circumstances

As noted *supra*, military judges must specifically determine whether "under the totality of the circumstances" the in-court identification was reliable despite the prior suggestive out-of-court identification. *Biggers*, 409 U.S. at 199; *Baker*, 70 M.J. at 291. In the instant case, there is an insufficient basis in the record to conclude that the military judge conducted this required totality of the circumstances analysis.

---

"a portrait, like a passport photo[, l]ike, an ID photograph style, just the upper part of his face."

**7** Both the military judge and this Court's majority rely on the victim's *in*-court description of Appellant as evidence of the accuracy of her prior *out*-of-court description. However, it is unclear how a witness's description of an accused *after* the unduly suggestive identification process is compelling evidence of the strength of her *prior* description. Similarly, it is unclear how a victim's contemporaneous description of an accused as she looks at him sitting in the courtroom is particularly helpful on this point.

In support of the military judge's ruling in this case, the majority points to the military judge's invocation of the phrase "all the surrounding circumstances" when he discussed the victim's description of her assailant. *United States v. Criswell*, __ M.J. __, __ (17) (C.A.A.F. 2018) (internal quotation marks omitted). It appears that the majority concludes that the military judge's reference to "all the surrounding circumstances" is sufficiently indicative of the fact that he conducted a "totality of the circumstances" analysis. However, the context in which the military judge used this phrase is important. Specifically, *after* the military judge gave his ruling and denied the defense motion to suppress the in-court identification of the Appellant, the defense counsel asked if the military judge made any findings of fact *about the clothing worn by the assailant* on the night of the party. During his response, the military judge stated:

> The Court considered the environmental factors and the description given by the alleged victim, in this case, and given *all the surrounding circumstances* the alleged victim's description is not so far removed from one—what one might expect, again, given the evidence known to the Court, at this time, that that in and of itself the discrepancies raised by the defense on cross-examination in and of themselves so concern the Court as to disallow the in court identification.

(Emphasis added.)

As can be seen, the military judge's intent when he used the phrase "all the surrounding circumstances" is—at best—ambiguous. This is particularly true in light of the fact that the phrase "the totality of the circumstances" is so commonly used in the law, and yet the military judge did not employ it. Furthermore, the military judge did not place on the record any reasoning that would indicate that he had actually engaged in a totality of the circumstances analysis. For example, the military judge failed to acknowledge that the victim's description of the perpetrator was not unique to him because there were so many other individuals in the vicinity who matched the victim's generalized description of the perpetrator—a black male in his early twenties around six feet tall. *Cf. Rhodes*, 42 M.J. at 291 (concluding that in-court identification was reliable in part because at the time of the out-of-court identification, "it [was] highly unlikely that someone would be walking down the road in a suit and dress

shoes"). Additionally, the military judge failed to acknowledge the cross-racial nature of the identification. This factor is important in evaluating the reliability of an identification.[8] *Perry*, 565 U.S. at 243–44 (noting that "the race of the suspect and the witness" is relevant factor for considering the likelihood of misidentification); *United States v. Jernigan*, 492 F.3d 1050, 1054 (9th Cir. 2007) (en banc) ("Cross-racial identifications … are particularly suspect."); *United States v. Stevens*, 935 F.2d 1380, 1392 (3d Cir. 1991) (explaining that a cross-racial identification was a "countervailing consideration[] … that detract[ed] from the reliability of" the victims' identifications); *cf. United States v. McLaurin*, 22 M.J. 310, 312 & n.2 (C.M.A. 1986) ("[I]n the experience of many it is more difficult to identify members of a different race....").

In light of the muddled record of what the military judge meant when he referenced "all the surrounding circumstances," and in light of the military judge's failure to consider highly relevant factors in evaluating the strength of the out-of-court identification, I conclude that there is an insufficient basis to conclude the military judge conducted the required totality of the circumstances analysis in this case.

## 2. Corrupting Effect of the CID Identification

In addition to the military judge's deficient totality analysis, the military judge also failed to consider whether the indicia of reliability identified in the course of his *Biggers* analysis were "strong enough to outweigh the corrupting effect of the police-arranged suggestive circumstances." *Perry*, 565 U.S. at 232; *Brathwaite*, 432 U.S. at 114 ("*Against these* [*Biggers*] *factors is to be weighed the corrupting effect of the suggestive identification itself.*" (emphasis added)); *Baker*, 70 M.J. at 291; *Rhodes*, 42 M.J. at 291 (concluding "that the reliability of the in-court identification outweighs the suggestiveness of the" out-of-court identification procedure *after* evaluating the *Biggers* factors). Nowhere in the military judge's summary of the relevant law or his application of the

---

[8] This statement should not be read to imply that cross-racial identifications are per se unreliable. Instead, it merely notes that when law enforcement uses an improperly suggestive out-of-court identification procedure, the cross-racial nature of the identification is of particular concern and must be appropriately factored into the underlying analysis of the strength of the victim's identification.

law does he reference or apply this additional analytical step.[9] Therefore, there is "clear evidence" in the record that overcomes the presumption that the military judge knew and properly applied the law. *United States v. Rapert*, 75 M.J. 164, 170 (C.A.A.F. 2016) (citation omitted) (internal quotation marks omitted).

In light of these significant errors, the military judge's decision is not entitled to deference. *See Baker*, 70 M.J. at 289 ("Because the military judge provided a detailed ruling evidencing an accurate understanding of the *Biggers* factors and their application to the facts on the record, we give deference to his ruling in our analysis."). I therefore turn to whether the admission of the in-court identification violated Appellant's due process rights.

In my view, the record before us does not provide a sufficient basis to conclude that the in-court identification was reliable. The following five points demonstrate that the *Biggers* reliability factors considered by the military judge were outweighed by the corrupting effect of the suggestive out-of-court identification. First, as the military judge correctly found, the out-of-court identification procedure that was inexplicably employed by the CID agent—whereby he showed the victim just a single photograph—was "unnecessarily suggestive." Indeed, it was *highly* suggestive. As the Supreme Court has observed, the danger of "an incorrect identification" is "increased if the police display to the witness only the picture of a single individual who generally resembles the person [she] saw." *Simmons*, 390 U.S. at 383. Second, as the military judge correctly determined, the Government did not prove that the out-of-court identification was reliable. Third, as noted by the Supreme Court, when such a highly suggestive out-of-court identification process is

---

[9] The mere fact that the military judge stated on the record that he considered "all the surrounding circumstances" does not demonstrate that he conducted the required weighing. For instance, in evaluating the victim's level of certainty in making the out-of-court identification, the military judge did not consider the corrupting effect of being shown only one photograph on the witness's level of certainty. Simply stated, if a witness expresses a great deal of certainty about an out-of-court identification, but the out-of-court procedure was highly suggestive, it is unclear how this certainty weighs in favor of reliability. And yet, that is exactly the approach taken by the military judge in this case.

used, "the witness thereafter is apt to retain in [her] memory the image of the photograph rather than of the person actually seen, reducing the trustworthiness of subsequent … courtroom identification." *Id.* at 383–84. Fourth, courts have recognized "[t]he 'dangers inhering in eyewitness identification,' particularly of a stranger encountered under stressful conditions." *McLaurin*, 22 M.J. at 312 (quoting *Wade*, 388 U.S. at 229); *Haliym v. Mitchell*, 492 F.3d 680, 706 (6th Cir. 2007). Fifth, this case involved a cross-racial identification, which "detract[s] from the reliability of" a victim's identification. *Stevens*, 935 F.2d at 1392; *see also Jernigan*, 492 F.3d at 1054. Therefore, because the record lacks clear and convincing evidence that the in-court identification was not the result of CID's highly suggestive out-of-court identification procedure, I conclude that the military judge abused his discretion in admitting the victim's in-court identification.

## C. Prejudice

An error of this constitutional dimension requires reversal unless the Government can establish that it was harmless beyond a reasonable doubt. *See United States v. Hills*, 75 M.J. 350, 358 (C.A.A.F. 2016). An error is harmless beyond a reasonable doubt only when it does "not contribute to the verdict obtained"; that is, the "error [is] unimportant in relation to everything else the [factfinder] considered on the issue in question, as revealed in the record." *United States v. Chisum*, 77 M.J. 176, 179 (C.A.A.F. 2018) (citation omitted) (internal quotation marks omitted). Stated differently, an error is prejudicial "when 'there is a reasonable possibility that the [error] complained of might have contributed to the conviction.'" *Hills*, 75 M.J. at 357 (quoting *United States v. Moran*, 65 M.J. 178, 187 (C.A.A.F. 2007)). Applying this harmlessness beyond a reasonable doubt standard, I find prejudice in Appellant's case.

I first note that the Government has not attempted to establish harmlessness before this Court. And indeed, several factors discussed below indicate that the improperly admitted in-court identification did contribute to Appellant's convictions. To begin with, as reflected in the quote from Justice Brennan cited at the outset of this opinion, an in-court identification of a perpetrator by a victim tends to weigh very heavily against the accused. *Watkins*, 449 U.S. at 352 (Brennan, J., with whom Marshall J., joined, dissenting). Next, trial counsel emphasized the victim's in-court identifi-

cation in the findings argument by asserting that the victim "looked Appellant in the eye, looked him in the face" in court "and said that's the man who sexually assaulted" her. Further, the military judge, who was the factfinder in this case, determined that the in-court identification was reliable. *Cf. United States v. Hukill*, 76 M.J. 219, 223 (C.A.A.F. 2017) (citing the military judge's evidentiary ruling that probative weight of evidence was high in assessing prejudice for erroneous admission of the same evidence). And finally, I note that "mistaken eyewitness identifications are responsible for more wrongful convictions than all other causes combined." *United States v. Brownlee*, 454 F.3d 131, 142 (3d Cir. 2006) (citation omitted) (internal quotation marks omitted); *see also Wade*, 388 U.S. at 228 ("[T]he annals of criminal law are rife with instances of mistaken identification."). In light of these concerns, I conclude that there is a "reasonable possibility" that the error in admitting the in-court identification contributed to Appellant's convictions. Accordingly, I believe this Court should set aside the findings and sentence and authorize a rehearing.

### III. Conclusion

Because I find an abuse of discretion by the military judge and prejudicial error in the admission of the in-court identification, I respectfully dissent.